**ROGAN, Collector of Internal Revenue, v. BLUE RIDGE OIL CO., Limited, et al.** *

**No. 7643.**

Circuit Court of Appeals, Ninth Circuit.
April 20, 1936.

*Rehearing denied June 29, 1936.

eration for the agreements. The District Judge, in denying the tax claim, was of the opinion that the sum received as such consideration was not income to the bankrupt. This question is the only one here involved.

This case differs from the Monrovia Oil Case (Monrovia Oil Co. v. Com'r of Internal Revenue) (C.C.A.) 83 F.(2d) 417, to-day decided. Here, if the question of an association such as found in that case is involved, it has to do only with the *creation* of the association and not the *income produced by* the association and distributed to the associates. It is entirely conceivable that the lessee of an oil field may make a profit in creating an association to which he contributes certain factors, which profit is entirely apart from the profits arising from the operations of the association thereafter.

Likewise, assuming, but not conceding, that the lessee was in some way the trustee or agent of the certificate holders [see Thompson v. Com'r (C.C.A.) 28 F.(2d) 247, 249], it is equally conceivable that the lessee could realize a profit in creating such agency or trust, which profit would be personal to the lessee.

There are two general classes of certificates evidencing the contract between the lessee and the participants in the petroleum product or net profits of the operation of wells on leaseholds. One class of agreements has to do with the entire interest of the lessee in the oil field, and the parties contracted with may obtain certificates evidencing such a participancy in all the operations of the lessee. By another customary form the lessee contracts with the certificate holders for a share of the product or net revenue of a specifically named well. It is with this latter class of contracts, dealing with a single well, that this case is concerned.

The method of disposition of part interests of the lessees of oil lands, by sales of percentages in the petroleum product or agreements to divide the net proceeds of operation of wells on the leasehold, has been long established in the oil fields of California. (1) Such interests are created in the proceeds or agreed as to the net profits of a well already developed. This affords the owner of the leasehold an opportunity to raise the funds to drill other wells in which the lessee will have the entire interest. (2) The lessee may have a well partially drilled and desire funds with which to carry on the drilling, or he may

Frank J. Wideman, Asst. Atty. Gen., J. Louis Monarch, Lester L. Gibson, and Ellis N. Slack, Sp. Assts. to Atty. Gen., and Peirson M. Hall, U. S. Atty., and Alva C. Baird, Asst. U. S. Atty., both of Los Angeles, Cal., for appellant.

Joseph J. Rifkind and Carleton W. Holbrook, both of Los Angeles, Cal. (John F. Gilbert, of Los Angeles, Cal., of counsel), for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

The collector of internal revenue appeals from an order of the District Court made in the Blue Ridge Oil Company receivership proceedings, which order rejected the government's claim for income taxes assessed against the company for the year 1930.

The oil company, taxpayer, held an oil and gas lease in Los Angeles county. The lease is not set out in the record. During 1930 taxpayer received $94,300.01 as consideration for making of agreements for unit interests in oil and gas to be produced from specified wells. The agreements are evidenced by certificates. The government assessed a tax of $11,784.48 on the consid-

contemplate an entirely new well. In these latter situations it has been held that the lessee, in making his contracts, impliedly covenants that the money will be used for the drilling of the well. Differding v. Ballagh, 121 Cal.App. 1, 8 P.(2d) 201. It is obvious, however, that in both the latter situations the well may be drilled and completed and placed on the contemplated production without using the entire amount contributed by the holders of the percentage interest. After they are on production, a part of the certificate holders' share is to provide for continued operation.

█ It is clear that in the first case above described, where the contract is for the product or net income of a completed well specifically described in the certificate evidencing the contract, income to the lessee has resulted.

In the second case above described, there is no obligation to return to the certificate holder the excess of moneys received by the lessee as consideration for the contract, above the cost of the well. Such excess constitutes income to the lessee.

█ Here the · moneys received by the lessee as a consideration for the contracts for produced oil is assessed as "income" by the Commissioner of Internal Revenue. Such assessment has "the support of a presumption of correctness" and the taxpayer "has the burden of proving it to be wrong." Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212. The burden of proof is therefore upon the taxpayer lessee to show that the well which is the subject of the contract either (a) was not a completed well, or (b) that the cost of its drilling or completion was as much as the amount paid in consideration for the contracts.

█ The record in this case shows an assessment as an item of income to the taxpayer of the sum of $94,300.01 from the creation of an indeterminate number of agreements, of which the following is an exemplification:

"Number 68         Royalties 2/10 of 1%
    "Certificate of Royalty Interests
              "C. W. Bland
    "Warden Number One
"Cancelled Never Issued B.M.B. Cancelled
    Never Issued
    "This is to certify that Beata W. Cass is the owner of an undivided Two tenths of one per cent of all oil, gas and other hydro-carbon substances to be produced, saved and · sold by the undersigned, from Well Warden Number One, pursuant to · that certain lease dated August 15, 1930, executed by E. R. Austin to C. W. Bland and Price Ellison, covering the following described property and premises in Los Angeles, California, to-wit: Lots One (1) and Two (2) in Block Thirteen (13) of Del Rey Beach Tract, in the City of Los Angeles, as per Map Recorded in Book 6, Pages 186 and 187 of Maps, Records of Los Angeles County, State of California, subject, however, to a deduction of Eight Dollars ($8.00) per month on each one per cent covered by this certificate to be reserved for the cost of maintenance and operation of Well Warden Number One, after said well is placed on production, and subject also to the payment and deduction by the. undersigned of a proportionate amount of the mineral rights tax upon the sub-lessee's interest in said lease and property.

"This certificate is subject to all the terms and conditions of the said oil lease, recorded in Book 10250, Page 81, Official Records of Los Angeles County, California.

"In witness whereof the said C. W. Bland and Price Ellison have caused these presents to be executed and signed this 7th day of October, 1930.
                        "C. W. Bland
                        "Price Ellison."

It will be noted that the certificate holder is to furnish funds for other operations *after* completion.

There is nothing in the record to show how many such contract obligations were created. The only testimony on this subject is as follows: "During that year [1930] the corporation received the sum of $94,300.01 as the proceeds from the sale of percentage interests."

While the plural "interests" may evidence more than one contract, it does not evidence more than two, nor does it evidence that the two contracts were not made with one person.

The lower court makes no finding with regard to the number of such contracts or the person or persons with whom the taxpayer made them, or the relative amount of interest in the well retained by the taxpayer after making the contracts.

There is no evidence as to how much of the consideration received for the contracts was expended on the well Warden

Number One. The only testimony on this subject is as follows: "The proceeds from the sale of these per cent interests were entirely used in drilling oil *wells* during the year. Approximately 4/5ths of these proceeds were expended upon intangible drilling costs and 1/5th thereof upon tangible drilling costs."

This evidence that the money was expended in drilling unidentified oil wells (plural) is not evidence that it was spent on drilling well Warden Number One. For all the record discloses well Warden Number One may have been completed and placed on production for an expenditure of but· a small portion of the amount received from the contracts, and the remaining money, after the well was completed, expended by the taxpayer in the development of other wells upon the property for its own benefit, and in which the contracts gave no interest to the certificate holders.

Since the Commissioner of Internal Revenue's assessment of $94,300.01 as income is prima facie correct, and since the burden of proof is upon the taxpayer to show to what extent, if any, it was not income, and since the taxpayer has failed to maintain such burden of proof, we hold that the assessment is valid. In so far as it is in conflict with this holding, the order below is reversed.

*Rehearing denied June 29, 1936.