## GRISON OIL CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

## ROGERS OIL & GAS CO. v. SAME.

### Nos. 1632, 1633.

Circuit Court of Appeals, Tenth Circuit.

April 11, 1938.

Chas. H. Garnett, of Oklahoma City, Okl., for petitioners.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before LEWIS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

These petitions for review of redeterminations of the Board of Tax Appeals present the common question whether a taxpayer may deduct from gross income as ordinary business expense the amount of intangible costs under a so-called turnkey contract for a drilled and equipped oil well where such amount is segregated from the cost of the equipment and physical property of the well.

The taxpayer in the first case owned an undivided interest of 9.72 per cent. in an oil and gas lease in Oklahoma City. The owner of the remainder of the lease made a turnkey contract in 1933 under which three oil wells were drilled on the

lease and fully equipped at the price of $110,000 each. The taxpayer paid its proportionate share of the cost of such wells, based upon its interest in the lease. The percentage of the intangible drilling and development .costs assignable to the share of the taxpayer was $10,193.71. The taxpayer did not drill or participate in the drilling of any other wells during that year. It elected to treat the intangible drilling and development costs as ordinary business expense, and in its return for that year deducted the sum deemed to represent its aliquot share thereof. The taxpayer in the second case through its authorized agents entered into turnkey contracts in 1932, under which drilling contractors drilled and fully equipped for fixed prices a number of oil and gas wells on leaseholds which it owned in Texas. The portion of the contract prices in the aggregate for drilling such wells allocated by the taxpayer to intangible drilling and development costs was $38,184.32, and such sum represented a reasonable and correct allocation of such costs as distinguished from cost of equipment and other physical property. The taxpayer had made similar allocations of costs in previous years and claimed the amount as business expenses, but in those instances the intangible drilling and development costs were covered by separate contracts from the equipment and other physical property, the wells drilled during the taxable year in question being the first that petitioner had drilled under turnkey contracts for completed wells. In making its return for that year, the taxpayer deducted as ordinary business expense the amount representing intangible drilling and development costs.

The Commissioner, in each instance, disallowed the deduction, treated the expenditure as a capital outlay returnable through depletion, and laid a resulting deficiency; and the Board of Tax Appeals sustained his action.

Subdivision (a) of section 23 of the Revenue Act of 1932 provides that all ordinary and necessary expenses paid or incurred in carrying on a trade or business shall be deducted in computing net income; subdivision (k) provides that a reasonable allowance shall be made for exhaustion, and wear and tear of property used in the trade or business; subdivision (1) provides that, in the case of oil and gas wells, a reasonable allowance shall be made for depletion and for depreciation of improvements, according to the peculiar conditions; and section 24 provides that no deduction shall be allowed for any outlay for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. 47 Stat. 173, 179, 181, 183, 26 U.S.C.A. §§ 23(a, 1, m), 24 and notes. The pertinent part of Article 236, Treasury Regulations 77, reads: "All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. Examples of items to which this option applies are, all amounts paid for labor, fuel, repairs, hauling, and supplies, or any of them, which are used (A) in the drilling, shooting, and cleaning of wells; (B) in such clearing of ground, draining, roadmaking, surveying, and geological work as are necessary in preparation for the drilling of wells; and (C) in the construction of such derricks, tanks, pipe lines, and other physical structures as are necessary for the drilling of wells and the preparation of wells for the production of oil or gas. In general, this option applies only to expenditures for those drilling and developing items which in themselves do not have a salvage value. For the purpose of this option, labor, fuel, repairs, hauling, supplies, etc., are not considered as having a salvage value, even though used in connection with the installation of physical property which has a salvage value. Drilling and development costs shall not be excepted from the option merely because they are incurred under a contract providing for the drilling of a well to an agreed depth, or depths, at an agreed price per foot or other unit of measurement."

The validity of the regulation is not open to question. Ramsey v. Commissioner, 10 Cir., 66 F.2d 316, certiorari denied, 290 U.S. 673, 54 S.Ct. 91, 78 L.Ed. 581. The taxpayers rely upon it and contend that the option to deduct from gross income as ordinary business expense the intangible drilling and developing costs of an oil or gas well should not be denied merely because the well in each instance was drilled by a contractor under a turnkey contract for a completed and fully equipped well where such costs can be and are segregated from the cost of equipment and physical struc-

tures furnished under the contract. It is said that there is no basis in reason or in law for permitting a taxpayer to make the deduction where he buys all material, employs all workmen, and drills and equips a well, and denying the right to another taxpayer who accomplishes the same result through a turnkey contract. The regulation provides by clear and explicit terms that the option shall apply to expenditures made for items which constitute intangible drilling and development costs; and that drilling and development costs shall not be excluded merely because they are incurred under a contract providing for the drilling of a well at an agreed price per foot or other unit of measurement. It does not go beyond that definite boundary. It fails to provide in express terms or by fair implication that a taxpayer who lets a turnkey contract for a completed oil well may make a deduction for that part of the contract price paid to the contractor which is attributable to items in that class. Sums which a taxpayer expends for intangible drilling and development costs come within the ambit of the option; not part of the amount paid to a contractor for a completely drilled and fully equipped well. These taxpayers did not make payments to anyone for such costs. Instead, one paid its share of the contract price for three completed wells and the other paid in full the agreed prices for several wells. They cannot trace part of the price paid to a contractor for a capital asset of that kind through his hands and deduct as their ordinary business expense any part of the amount which the contractor paid for intangible drilling and development costs. It may be inequitable and seemingly harsh to allow one taxpayer to exercise the option where he purchases the material, employs workmen, and drills and equips the well, and to deny another taxpayer the privilege where he lets a turnkey contract for a completely drilled and fully equipped well for a fixed price. But taxation is a matter of statutes and valid regulations promulgated under authority of law. Equitable considerations are no warrant for courts to override governing statutes and regulations, to make insertions in their provisions, or to supply omissions in them.

The decisions of the Board find additional support. The regulation extending the option is not new or novel in the scheme of taxation. Corresponding regulations under corresponding provisions in earlier revenue acts have existed for many years, and the Commissioner has uniformly interpreted them as being inapplicable to a taxpayer who causes an oil or gas well to be drilled and equipped under a turnkey contract. The re-enactment of the pertinent provisions in successive revenue acts without substantial change must be treated as congressional approval of the regulation and of the administrative interpretation placed upon it. Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 55 S. Ct. 158, 79 L.Ed. 367; Hartley v. Commissioner, 295 U.S. 216, 55 S.Ct. 756, 79 L.Ed. 1399; Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Commissioner v. McKinney, 10 Cir., 87 F.2d 811.

In the absence of a statute or an authorized regulation providing otherwise, an expenditure made for the drilling and equipment of a completed oil well under a turnkey contract is a capital outlay returnable through depletion. No part of it may be deducted as an ordinary and necessary business expense.

The orders are severally affirmed.