*Decision will be entered under Rule 50.*

RETSAL DRILLING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 95776, 97715. Promulgated October 23, 1940.

*Harry C. Weeks, Esq.,* and *R. B. Cannon, Esq.,* for the petitioner.
*D. D. Smith, Esq.,* for the respondent.

1058

1060

## OPINION.

TURNER: That a completed oil well is a capital item seems to be well settled, *Grison Oil Corporation* v. *Commissioner*, 96 Fed. (2d) 125; *Harris Co.* v. *Commissioner*, 112 Fed. (2d) 76, affirming 38 B. T. A. 383; *O-W-R Oil Co.*, 35 B. T. A. 452; *Old Farmers Oil Co.*, 12 B. T. A. 203; and *Hughes Oil Co.* v. *Bass*, 62 Fed. (2d) 176; certiorari denied, 289 U. S. 726, and certainly the rule is general, if not fundamental, that the cost of a capital asset, whether expended as purchase price or for construction, creation, or development, must be capitalized and may not be deducted as expense in determining gross income, unless definitely and clearly provided by statute or valid regulation. The income tax statutes contain no such provision for the deduction of any of the amounts expended in drilling and equipping oil wells, and if such expenditures are allowable as deductions, it is because they fall within the provisions of article 23 (m)–16 of Regulations 86 and 94, which has been recognized as valid and which reads in part as follows:

(a) (1) Option with respect to intangible drilling and development costs in general: All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. * * * Drilling and development costs shall not be excepted from the option merely because they are incurred under a contract providing for the drilling of a well to an agreed depth, or depths, at an agreed price per foot or other unit of measurement.

The petitioner does not question the soundness of the decisions of the Board and the courts to the effect that payments made to a contractor under what are commonly known as turnkey contracts are not deductible under the above regulation. *Grison Oil Corporation* v. *Commissioner, supra,* and other cases previously cited. It is argued, however, that, since petitioner in the case of wells drilled by F. H. Brown agreed to furnish fuel, water, storage tanks, and connections and in the case of wells covered by the contract with the Producers Supply & Tool Co. was to furnish water, fuel, tanks, flow lines, and a man to supervise the drilling of the sand area and the running of the casing, and also to swab in the wells, the said contracts are not turnkey contracts and therefore such portions of the amounts paid under those contracts as may be said to have covered the cost of intangibles are deductible. The sum and substance of petitioner's argument is that the test of deductibility of intangible drilling costs is whether the particular contract is a turnkey contract and not whether it falls within the letter and spirit of the regulation. No discussion is required to demonstrate the fallacy of such an argument. If any part of

the amounts expended for drilling, equipping, and completing an oil well is to be deducted, it must meet the test of the statute and regulation, and it is not enough to say that such expenditures are deductible because the contract under which they were made is not, strictly speaking, a turnkey contract.

The contracts here were not contracts for the employment of labor and the purchase of various items of material and equipment but were contracts for the drilling and completing of oil wells. In other words, the petitioner was contracting for a finished job and the mere fact that it agreed to furnish some of the items needed by the contractors for use in the operations does not convert the contracts here into contracts for the employment of labor and the purchase of equipment.

What was said in *Grison Oil Corporation* v. *Commissioner*, *supra*, is equally applicable here. In that case the court said:

\* \* \* They cannot trace part of the price paid to a contractor for a capital asset of that kind through his hands and deduct as their ordinary business expense any part of the amount which the contractor paid for intangible drilling and development costs. It may be inequitable and seemingly harsh to allow one taxpayer to exercise the option where he purchases the material, employs workmen, and drills and equips the well, and to deny another taxpayer the privilege where he lets a turnkey contract for a completely drilled and fully equipped well for a fixed price. But taxation is a matter of statutes and valid regulations promulgated under authority of law. Equitable considerations are no warrant for courts to override governing statutes and regulations, to make insertions in their provisions, or to supply omissions in them.

The petitioner argues that a segregation of costs can and should be made, and in support of that argument, points to the supplemental agreement with F. H. Brown under date of August 12, 1935, wherein it is stated that "the real consideration was and is the sum of $6,500.00 for the equipment and $6,000.00 for the labor, insurance, drilling expenses, etc., and making an aggregate of $12,500.00 for each well \* \* \*." The original contract, dated July 22, 1935, had provided that of the aggregate amount of $12,500 to be paid, $5,500 was for equipment, $5,000 for labor, insurance, etc., and $2,000 was a bonus. With respect to the wells drilled by the Producers Supply & Tool Co., petitioner points out that the respondent's agent, in connection with his investigation of petitioner's liability herein, has made an allocation of the amounts paid for the various wells between equipment and intangible drilling costs and that the respondent may not now be heard to argue that the intangible drilling costs to petitioner are not determinable for the purpose of applying article 23 (m)–16, *supra*. Such allocation or segregation of costs is, in our opinion, of no moment here. In practically all of the turnkey cases which have been called to our attention the parties have agreed upon an allocation of the amounts paid to the contractors between cost of equipment and intangible drill-

ing costs and for all we know the allocation so made and agreed upon may have reflected in some instances the exact dollars and cents expended by the contractors for items of the same nature and character as those termed by the regulation as "intangible drilling and development costs." Nevertheless it was held in those cases that the amounts paid by the contractor for intangible drilling and development costs did not retain their identity for the purpose of applying article 23 (m)–16 to the payments made by the taxpayer to the contractor. See particularly *Grison Oil Corporation* v. *Commissioner, supra,* and *O–W–R Oil Co., supra.* Similarly the contracts here were not contracts for the employment of labor and the purchase of supplies, material, and equipment. The relationship between the parties was not that of employer and employee, but that of independent contractors. The petitioner did not hire labor or buy materials and supplies, but agreed to pay an independent contractor a stated sum for a finished job, leaving it to the contractor to make his own deal for labor and equipment, and the fact that the petitioner may have furnished some of the supplies and some items of equipment does not change the contracts so as to bring any portion of the amounts paid to the contractors within the provisions of article 23 (m)–16.

The petitioner makes the further contention, relying strongly on *I. Rudman,* 36 B. T. A. 803, that the contracts here under consideration were footage contracts and that amounts allocable to intangible development and drilling costs are deductible under the last sentence of the excerpt previously quoted from article 23 (m)–16. The claim that the contracts are footage contracts is based on the provision contained in the contract with the Producers Supply & Tool Co. to the effect that the wells were to be drilled to the Woodbine Sand found at "3600'–3650'" and testimony that the producing sand in the East Texas field could be estimated to within a few feet. Obviously those contracts were not footage contracts. In the *I. Rudman* case, the contractor was required to drill "to a depth of 2,950 feet" and we said that "the contract was no less a 'footage' contract because it recited a total stipulated lump sum consideration for drilling to a depth of 2,950 feet instead of an agreed price per foot." The obligation here was to drill completed wells in a proven field, or to a designated sand, and not to a depth of so many feet, and the fact that the parties may have had a fairly definite idea as to the approximate depth of the producing sand and may have so indicated in the contracts does not make the contracts footage contracts.

Bearing in mind that the expenditures here in question constituted part of the costs to petitioner of capital assets, namely, completed oil wells, we find nothing in the statute, the decisions of the Board or the courts, or the regulation itself to justify any extension of article 23

(m)–16, *supra*, to cover any part of the payments made to the contractors under contracts of the character here considered. It is accordingly our conclusion that no part of the amounts paid by petitioner to F. H. Brown or to the Producers Supply & Tool Co. in respect of the wells described in our findings of fact constituted expenditures by the petitioner for intangible drilling and development costs within the meaning of article 23 (m)–16, *supra*, and the respondent is sustained in his disallowance of the deductions claimed therefor.

The respondent admits on brief that of the $34,917.24 disallowed as deductions for intangible drilling costs for 1935, the petitioner actually paid or incurred $652.44 for repairs and supplies, $414.60 for surveying and permits, $420 for swabbing, and $157.50 for trucking, a total of $1,644.54. Accordingly the petitioner was within its rights under the regulation in electing to deduct as expenses the items enumerated.

The petitioner presented no evidence relative to the contracts under which the Taylor well No. 3 and the Nathan well No. 2 were drilled, and on brief it presented no argument to contest the respondent's disallowance of the deductions claimed in respect of those two wells. The respondent's action is accordingly sustained.

An issue involving percentage depletion for the year 1935 has been abandoned by the petitioner. Another issue for 1935, involving the respondent's action in including in petitioner's income $1,093.15 representing the proceeds of oil produced and paid over to petitioner's grantor under an oil and gas lease, has been abandoned by the respondent. The petitioner has abandoned another issue for 1937 involving allowance for depreciation on lease and well equipment.

*Decision will be entered under Rule 50.*