## COMMISSIONER OF INTERNAL REVENUE v. AMBROSE (two cases).
### No. 10053.

Circuit Court of Appeals, Fifth Circuit.

April 8, 1942.

Edward First, Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of In-ternal Revenue, both of Washington, D. C., and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Geo. S. Atkinson, of Dallas, Tex., for respondents W. D. Ambrose and Elizabeth Anne Ambrose.

Conard E. Cooper, of Tulsa, Okl., amicus curiae.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

These petitions for review present a single question involving income taxes for the year 1934. That question is whether these taxpayers were entitled, under Article 23(m)–16 of Treasury Regulations 86, to deduct from gross income as business expenses the intangible drilling and development costs borne by them in connection with the drilling of four oil wells on their property during the tax year.

The taxpayers owned a seven-eighths working interest in an oil and gas lease. Four wells were drilled upon the property by the Ross Drilling Company under cost-plus contracts, the company receiving as compensation for its services the actual cost of each project to it, plus a lump sum payment the amount of which depended upon the actual cost of the drilling. The contracts contained no provision relating to certain of the intangible drilling and development costs, and these items were furnished by the taxpayers. The remaining intangible drilling costs consisted of material and labor procured by the Ross Drilling Company subject to the approval of the taxpayers, and which were paid for by the taxpayers. All of these intangible drilling costs were deducted in respondents' tax returns as business expenses.

Article 23(m)–16 of Treasury Regulations 86 relates to intangible drilling and development costs, and gives the taxpayer an option either to deduct such costs from gross income as an expense, or to charge them to his capital account. The article also provides that such costs shall not be excepted from the option merely because they are incurred under a contract providing for the drilling of a well to an agreed depth or depths at an equal price per foot or other unit of measurement.

In the construction of this regulation the decisions uniformly have declined to ac-

cord a taxpayer any option where the drilling was accomplished under turnkey contracts. The reasoning has been that, under a turnkey contract, the drilling contractor obligates himself to furnish all supplies and equipment and perform every act required in the completion of the well; that nothing is required of the lease operator except the payment of the agreed price; and that the acquisition of a producing oil well for a price increases the invested capital of the purchaser to the extent of that price.[1] On the other hand, the intangible costs of drilling, under footage contracts and in cases where the lease operator is also the driller, clearly fall within the option.[2]

In this case the Commissioner first contended that the wells were drilled under a turnkey contract, but the Board of Tax Appeals found that the agreement here made was neither a turnkey nor a footage contract. Accordingly, it concluded that the cases turned upon whether the Ross Drilling Company was an independent contractor or was the agent and employee of the taxpayers. It found that the relationship was one of agency, and sustained the taxpayers' right to the option exercised.[3] The Commissioner apparently has acquiesced in the controlling principle advanced by the Board,[4] but he contends that error was committed in finding the Ross Drilling Company to be an agent and not an independent contractor.

 We agree with the Board that the drilling contracts here involved were neither turnkey nor footage contracts, but we do not think that, by reason thereof, a new test must be established to control the disposition of this case. The principles of tax law from which the turnkey, footage,

and operator-drilled decisions evolved are, in our opinion, equally applicable to the contract for drilling upon the cost-plus basis presented by this case. The turnkey contract is not within the option provided by the regulation, because such a transaction is in essence the acquisition of a capital asset for an agreed lump-sum purchase price. The regulation provides the option with respect to "all expenditures for" intangible drilling costs. The turnkey contract contemplates no allocation of expenditures between intangible costs, tangible costs, and profit; the only expenditure made is for the purchase of a completed well. The footage contract is within the option by the express provision of the regulation. The lease operator who undertakes his own drilling is granted the option because the intangible costs are not capital in nature, as they have no salvage value; they can be allocated; and the expenditures to defray the intangible costs are made by the taxpayer.[5]

 Under the cost-plus contract here involved, all of the intangible drilling costs were susceptible of identification, calculation, and allocation by the taxpayers, and the expenditures therefor were in fact made by these taxpayers. These expenditures fell within the unequivocal language of the Regulation, and were in principle indistinguishable from similar costs incurred by a lease operator drilling his own well. The taxpayers were entitled to the option exercised by them for these reasons, irrespective of the legal relationship between them and the Ross Drilling Company.

The order of the Board of Tax Appeals is affirmed.

---

[1] J. K. Hughes Oil Co. v. Bass, 5 Cir., 62 F.2d 176, certiorari denied 289 U.S. 726, 53 S.Ct. 523, 77 L.Ed. 1475; Ramsey v. Commissioner, 10 Cir., 66 F.2d 316; Grison Oil Corp. v. Commissioner, 10 Cir., 96 F.2d 125, certiorari denied Grison Oil Corp. v. Helvering, 305 U.S. 613, 59 S.Ct. 73, 83 L.Ed. 391; T. K. Harris Co. v. Commissioner, 6 Cir., 112 F.2d 76; Old Farmers Oil Co. v. Commissioner, 12 B.T.A. 203.

[2] Ramsey v. Commissioner, 10 Cir., 66 F.2d 316; C. W. Titus, Inc., v. Commissioner, 32 B.T.A. 1222.

[3] 42 B.T.A. 1405.

[4] See Chief Counsel's Memorandum, G. C. M. 23034–Internal Revenue Bulletin No. 1—Jan. 5, 1942.

[5] It is apparent that the regulation was drafted for application primarily to drilling accomplished by an operator upon his own lease.