## RETSAL DRILLING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9953.

Circuit Court of Appeals, Fifth Circuit.

April 17, 1942.

Harry C. Weeks, of Fort Worth, Tex., for petitioner.

Helen R. Carloss, Sewall Key, J. Louis Monarch, and Newton K. Fox, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Conard E. Cooper, of Tulsa, Okl., for amicus curiae on behalf of petitioner.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is another of that growing body of cases in which the taxpayer makes claim that moneys expended for drilling and equipping oil wells, are deductible under the intangible drilling and development costs option.[1] Expenditures on eighteen wells are involved. Seven of the eighteen were drilled under contracts which provided that the owner would "furnish fuel, water, storage tanks, connections and all other material necessary and incident to the drilling and completing of the wells other than that which the contractor has obligated himself to furnish." The contractor was obligated to drill the well, furnish the drill rig and machinery, labor and workmen's compensation, surface casing, permanent casing, tubing, cement, derricks and slush pits, for a consideration of $6500 for the equipment and $6,000 for the labor, insurance, drilling expenses, etc., payable partly in cash and partly in oil. Eleven of the wells were drilled under contracts requiring the owner to furnish water, fuel, tanks, flow lines and a man to supervise the drilling of the sand area and the running of casing and also to swab the well, the contractor was to furnish slush pits, surface pipe, derrick, pipes, casing, connections, etc., and all drilling equipment, labor, tools and supplies, incident to the drilling of the well, other than those to be furnished by petitioner. The contract further provided "these wells to be drilled to the Woodbine sand found at 3600 to 3650 feet." For the taxable years the petitioner, in accordance with its consistent practice in prior years, elected to charge off all of its intangible drilling and development costs incurred in drilling operations. Of the amounts so charged, re-

---

[1] (a) (1) "Option with respect to intangible drilling and development costs in general: All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. * * * Drilling and development costs shall not be excepted from the option merely because they are incurred under a contract providing for the drilling of a well to an agreed depth, or depths, at an agreed price per foot or other unit of measurement." Art. 23-M, Regulations 86 and 94.

spondent disallowed payment made to the drilling contractors under the contracts described above. The Board, turning its decision[2] upon the fact that the "relationship between the parties was not that of employer and employee, but that of independent contractors", and that though the contracts were not, they were analogous to, turn key contracts and were controlled by the same rule, affirmed the Commissioner's determination.

Developing its view the Board declared: "If any part of the amounts expended for drilling, equipping, and completing an oil well is to be deducted, it must meet the test of the statute and regulation, and it is not enough to say that such expenditures are deductible because the contract under which they were made is not, strictly speaking, a turnkey contract. The contracts here were not contracts for the employment of labor and the purchase of various items of material and equipment but were contracts for the drilling and completing of oil wells. In other words, the petitioner was contracting for a finished job and the mere fact that it agreed to furnish some of the items needed by the contractors for use in the operations does not convert the contracts here into contracts for the employment of labor and the purchase of equipment. * * *" The petitioner did not hire labor or buy material and supplies but agreed to pay an independent contractor, a stated sum for a finished job, leaving it to the contractor to make his own deal for labor and equipment and the fact that the petitioner may have furnished some of the supplies and some items of equipment does not change the contracts so as to bring any portion of the amounts paid the contractors within the provisions of Art. 23-M 16.

Petitioner meets the Board's position with the contention here, that the so-called turn key cases on the analogy of which the Board relies, were not cases laying down broad principles of construction and therefore furnishing bases for deciding other cases by analogy to them, they were merely fact cases in each decided on its particular facts. Each held that the taxpayer had not shown within the meaning of the regulation, that he had expended monies for intangible drilling and development costs but had shown that he had in effect,

contracted for the purchase outright of a capital asset, a completed well. Nothing in any of those cases, argues the petitioner, lends support to the view the Board took here, that amounts expended by the taxpayer, not in the purchase of a completed well but in connection with drilling and development conducted by him on his property were any the less under the option because some of the costs of the drilling were paid out to an independent contractor. Indeed, urges petitioner, the regulation itself, by its express provision, "drilling and development costs shall not be excepted from the regulation merely because they are incurred under a contract providing for the drilling of a well to an agreed depth or depths at an agreed price per foot or other unit of measurement", completely negatives this view.

We agree with petitioner. Though in the beginning the Commissioner claimed that the contracts in question were turn key contracts, this view was not accepted by the Board and it is not, indeed, it could not, reasonably be claimed that they were. What is affirmed by the Commissioner and held by the Board, is that they so resemble, are so much like turn key contracts, that they must be dealt with as though they were.

Both in tax decisions and in those arising under general law,[3] a turn key job has a fixed and definite meaning in the industry. On such a job "the driller of an oil well undertakes to furnish everything and does all of the work required to complete the well, place it on production, and turn it over ready to 'turn the key' and start the oil running into the tanks." In the tax decisions which have held amounts paid to contractors for a completed well to be delivered under turn key contracts, not to be within the option, nothing was said about the relationship between the taxpayer and the contractor, whether it was an employer and employee or an independent contractor relationship. The dominant idea in those decisions was not legal relationship at all,[4] it was that what was in question there was not an expenditure in doing oil drilling and development but a purchase of a capital asset, a completed well. Here the Board, by a false analogy, makes dominant the idea of the relationship between the owner and the one doing the work of

[2] 42 B.T.A. 1057.
[3] White v. Cascade Oil Co., 14 Cal.App. 2d 695, 58 P.2d 994, 998.
[4] Cf. Com'r v. Ambrose, 5 Cir., 127 F.2d 47, just decided.

drilling and equipping. We think it clear that this will not do and that as matter of fact and law, it is immaterial whether drilling and equipment costs, so long as they are such costs, and not the purchase price of a completed well, as in turn key contracts, are incurred and paid on force account, on footage or cost plus contracts,[5] or on contracts with an independent contractor for a lump sum. Even if we did not think it plain that the refusal to apply the regulation here results in a verbal distortion, in effect, an amendment of it, we should hesitate long before agreeing with this view. For it ought to be very clear before drawing it, that the distinction thus drawn between work done on force account or under footage or cost plus contracts, and that done through an independent contractor, is compelled by the regulation, since its drawing will necessarily result in erecting a barrier against the use in the oil industry of the services of skilled independent drilling contractors and their employees, and in imposing upon individual and corporate oil producers, the unnecessary and burdensome expense of training and maintaining their own drilling crews.

We have no disposition to question the decisions in the turn key cases. We think those cases were correctly decided. But we think it plain that in denying the option there, because a turn key contract for a completed well should be regarded as the purchase rather than the drilling of a well, those cases, on their facts, pressed the analogy of the purchase of capital assets there made use of, to the verge, and that if any further pressing of the analogy is to be done, it must be by amendment, and not by construction, of the regulation. That those cases were essentially fact cases and were not decided with the idea or for the purpose of laying down general controlling principles, the Hughes case,[6] the pioneer in that field, makes perfectly plain. There the court saying: "it is not claimed by appellant that these regulations in precise terms provide for the deduction which it claims. It is contended that they do so in principle," held, under the facts there presented, that the ruling the Commissioner made, " 'that a producing oil well is a physical property having a useful life beyond the taxable year, and that its aquisition for a price increases the invested capital of the purchaser to the extent of that price' is supported, not only by the presumption of validity which ordinarily attends the ruling of the Commissioner, but that it is reasonable on its face, and is in accord with practice, principle, and authority."

We conceded the force of the taxpayer's argument,[7] that no sound reason appeared for allowing the deduction for amounts paid out for work, done with its own labor and equipment or by a contractor for it on a footage basis, which resulted in a completed well, while denying it to the same result, a completed well, under a turn key contract.

■ But pointing out that to obtain the deduction it was not sufficient for the taxpayer to show that reasoning by analogy, it ought to be, it must show that it was within the regulation, we rejected its claim that the deduction should be allowed it. There, the taxpayer was using analogy to extend the regulation to claims not covered by it. Here, the shoe is on the other foot, and the Commissioner, because of some resemblances in these facts to the facts in the turn key cases, is seeking by the same

---

5 Com'r v. Ambrose, note supra.

6 "These contracts obligated the contractor 'to furnish all derricks, all necessary drilling equipment, machinery, casing, cement and labor, in fact, everything necessary to complete said well in a first-class workmanlike manner, including fuel and water, the owner not being obligated to furnish anything whatever in the way of labor, fuel, drilling supplies, or anything necessary for the completion of the well.' " J. K. Hughes Oil Co. v. Bass, 5 Cir., 62 F.2d 176, 177.

7 Of that argument we said:

"It is alleged that there is no reason in or basis for the distinction, for the purposes of capitalization, between moneys which an owner pays out when he drills a well himself, on his own property, with his own labor and equipment, or when a contractor drills it for him on a footage basis and the same amount of moneys representing the same amount of drilling and development costs paid out to a contractor as a part of the whole cost price of a turnkey job.

"If appellant claims no more than that the distinction is supported by no evident principle, that subjected to analysis moneys laid out in a completed improvement, such as an oil well, are no less and no more capital expenditures when it is furnished by a contractor on a footage basis than when it is done under a turnkey contract, I think we could agree with him. If, however, he means to claim that, because this is so, he is entitled to have his deduction allowed, we cannot."

kind of faulty analogy, to exclude from the regulation, a case coming clearly within its terms. As we rejected the effort of the taxpayer there to extend the regulation by analogy to cases not coming within it, we reject the same kind of effort, here, to exclude from the regulation, cases falling clearly within its terms.

The order of the Board is reversed and the cause is remanded for further and not inconsistent proceedings.