OPINION. OppeR, Judge: The amended regulations (for years beginning after 1942) dealing with deduction of the costs of drilling oil and gas wells contain a new provision affecting the option to “expense” intangible drilling costs: “Included in this option are all costs of drilling and development undertaken (directly or through a contract) by an operator of an oil and gas property whether incurred by him prior or subsequent to the formal grant or assignment to him of operating rights * * * except that in any case where any drilling or development project is undertaken for the grant or assignment of a fraction of the operating rights, only that part of the costs thereof which is attributable to such fractional interest is within this option * * *.” “Operating rights,” are defined as “a leasehold interest or other form of operating rights or working interest” and “an operator” as “one who holds a working or operating interest in any tract or parcel of land either as a fee owner or under a lease or any other form of contract granting working or operating rights.” These regulations were expressly given Congressional approval. H. Con. Kes. 50, 79th Cong., 1st Sess. (July 21,1945). It may well be that under the regulation petitioner acquired “operating rights” and became “an operator” by the first assignment to him, that of July 31,1947. By regulations enjoying more than ordinarily the force of law he was then expressly given the expensing option as to drilling costs “incurred * * * prior or subsequent to the formal grant.” But this would be so only if two prerequisites exist: first, that the drilling costs as such were undertaken “by him” “directly or through a contract”; and second, if he acquired his fractional rights in consideration of the development agreement, that no more than his fractional share of the costs is included in the option. As to the first condition, the contract with Yasen, coupled with the facts here shown to exist, leave no doubt that Vasen was to do the drilling, not as petitioner’s agent, cf. W. D. Ambrose, 42 B. T. A. 1405, affd. (C. A. 5) 127 F. 2d 47, but in discharge of his own obligations to “continue to drill said well with due diligence” (emphasis added) Even assuming that there was an implied obligation to use the purchase money as far as necessary for entering into a drilling contract, see Rogan v. Blue Ridge Oil Co. (C. A. 9), 83 F. 2d 420, certiorari denied 299 U. S. 574, and though this is by no means clear, that the facts here show that all of it was so used, the legal relationship of the parties was such that it was Vasen and not petitioner who made the expenditures, and that if the drilling had been less expensive Vasen could have pocketed the difference, unlike the drilling agent in W. D. Ambrose, supra. See Bogan, supra. This is not a case analogous to a turnkey contract, which presumably would now be within the regulation. See Retsal Drilling Co. v. Commissioner, (C. A. 5) 127 F. 2d 355. What petitioner must show is that the drilling costs were “undertaken” by him. The contract shows that they were to be undertaken by Yasen, and that the full amount of petitioner’s cash was paid for the fractional interests he acquired. Since Yasen was an “operator” in his own right, the expenses were not also “undertaken” by petitioner. There is no legal or practical connection between the sums paid by petitioner under the contract for his fractional interest and the drilling costs defrayed by Yasen because he was required to continue to drill. We cannot regard the drilling expenses as those of petitioner, and accordingly no option is granted him even by the amended regulations. It hence becomes unnecessary to consider whether an adequate showing has been made under the second requirement, although in fact this is more like a case where money has been received in exchange for a fractional interest accompanied by the commitment (by Vasen, the seller) to drill; rather than that envisaged by the regulations of a “drilling or'development project * * * undertaken [by the purchaser] for the * * * assignment of a fraction of the operating rights * * *.” Petitioner did not agree to do the drilling nor to pay for it. Yasen did. It may well be that petitioner would be within the regulation if he had acquired hi s interest for his agreement to finance the drilling. Cf. Manahan Oil Co., 8 T. C. 1159; Berkshire Oil Co., 9 T. C. 903; or even if the amount to be paid and actually paid for drilling expenses were ascertainable and severable from the purchase price. Cf. Manahan Oil Go., Berkshire Oil Go., both sufra. But these are questions we need not decide.. Except for the amounts now conceded by respondent they are not this case. Decision will he entered under Bule 50.