**PLATT v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 10869.**

United States Court of Appeals
Seventh Circuit.

Oct. 26, 1953.

Rehearing Denied Dec. 8, 1953.

**698**

Isaac I. Bender, Chicago, Ill., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Joseph F. Goetten, Ellis N. Slack, Hilbert P. Zarky, Cecelia H. Goetz, Sp. Assts. to Atty. Gen., Washington, D. C., for respondent.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

The only issue presented on this review of the decision of the Tax Court reported in 18 T.C. 1229 is whether $14,000 invested by petitioner in a speculative oil and gas venture constitutes optional deductible intangible drilling costs under Section 23(m) of the Internal Revenue Code, 26 U.S.C.A. § 23 (m), and Section 29.23(m)–16 of Treasury Regulations 111.

The facts are not largely in dispute. Prior to July 1, 1947, one Vasen had, for nominal sums, acquired leases, i. e., the right to search for and produce oil and gas, on certain lands situated in "wild cat" territory in Mississippi, and, on that date was drilling thereon a well which had reached a depth of 11,200 feet. Between July 31, 1947 and October 13, 1947, petitioner entered into five agreements, whereby, for $14,000 paid by petitioner, Vasen assigned to him a 14/300 interest in the leases and in the well being drilled and agreed to continue drilling to a specified depth. The contracts were identical, the pertinent provisions being, in essence, as follows: "* * * George Vasen, * * * for and in consideration of Five Thousand Dollars * * * does hereby Transfer, Set Over and Assign to the said Sidney Platt, five three-hundredths interest in and to the oil and gas leases in and on the following lands * * * together with the same interest in the * * * well which has been drilled * * * to a depth of 11,200 feet; and the said George Vasen agrees to continue to drill said well with due diligence, until a total depth of 12,700 feet is reached, unless oil or gas is encountered in paying quantities at a lesser depth, or unless igneous or undrillable material is encountered at a lesser depth * * *; each party shall share his proportionate part of the profits, as his interest shall bear to the whole. The said George Vasen shall have exclusive management of and supervision over, the drilling of said well * * *. Nothing herein contained shall be construed to constitute the parties hereto partners or joint venturers in the drilling of said well."

Thereafter, on November 21, 1947, petitioner entered into a further agreement with Vasen whereby, in consideration of petitioner's additional payment of $2,800, Vasen agreed to drill the well from 12,700 feet to 13,500 feet. The latter depth was reached on November 24, 1947. Drilling continued until December 24, 1947, and then stopped for the holidays; it resumed in January, 1948, and proceeded until a depth of 20,450 feet was reached. Neither oil nor gas in paying quantities was ever found.

In his income tax return for 1947, petitioner deducted as intangible drilling costs, the amount of $16,800, being the total amount he had paid Vasen under the original assignment agreements

and the later contract of November 21, 1947. Respondent conceded petitioner's right to "expense" the sum of $2,800 paid under the latter agreement, as intangible drilling costs under the option granted by Section 29.23(m)–16(b) of Regulations 111, but disallowed deduction of the $14,000 because, as he said, this amount was "paid by petitioner as consideration for the acquisition of a 14/300 interest in certain oil and gas leases and a nonproductive well located thereon," and was not expended as intangible drilling costs. The Tax Court approved respondent's action.

Petitioner contends that the leases and the well had become worthless as of December 31, 1947, and that, therefore, the full amount, including the $14,000 paid for his fractional interest, was deductible from his income for that year, on the alternative grounds that the payment falls within the option provided by Section 29.23(m)–16(b) (1) (i) or that provided by Section 29.23(m)–16(b) (2) (iv) of Treasury Regulations 111.

Section 29.23(m)–16(b) (1) (i), of Regulation 111, promulgated pursuant to the code, provides, inter alia, that " * * * All expenditures made by an operator * * * incident to and necessary for the drilling of wells for the production of oil or gas, may, at the option of the operator, be deducted from gross income as an expense or charged to capital account. * * * "; and section 29.23(m)–16(b) (2) (iv) that: " * * * If the operator has elected to capitalize intangible drilling costs, * * * such costs incurred in the drilling of a nonproductive well may be deducted by the taxpayer as an ordinary loss provided a proper election is made in the return for the first taxable year * * * in which such a nonproductive well is completed * * * ". An "operator" is defined by subsection (b) (1) (i) as "one who holds a working or operating interest in any tract * * * of land [under any type of contract] granting working or operating rights."

■ A review of the record discloses evidence conclusively supporting the finding of the trial court that the sum of $14,000 invested by petitioner was a capital investment. If we assume, arguendo, that petitioner could have qualified as an operator under the statutory definition, to be entitled to claim this deduction under subsection (b) (1) (i), it was incumbent on him to prove that the $14,000 represented intangible drilling costs incurred and expended by him. Commissioner v. Ambrose, 5 Cir., 127 F.2d 47. Any claim that petitioner undertook or incurred any drilling costs is clearly refuted by the assignment agreements. By them petitioner acquired only two rights, viz., a 14/300 interest in the oil and gas leases and Vasen's obligation to drill the well to a depth of 12,700 feet, unless "oil or gas in paying quantities" or "undrillable material" were encountered at a lesser depth. "Exclusive management" of drilling and operating the well were reserved to Vasen, and the contracts expressly disavowed any construction which would constitute petitioner a "partner or joint venturer in the drilling of said well." Furthermore, Vasen paid all rentals on the leases, employed the driller and paid all drilling costs. He assumed no obligation to refund any portion of the $14,000 not actually expended in drilling the well. That money was his. Thus it is clear that petitioner incurred no drilling costs. The principal consideration for his surrender of $14,000 to Vasen was the assignment to him of an undivided interest in any oil and gas which might be found in the tract and produced,—a capital investment; a purchase of a property right. Rogan v. Blue Ridge Oil Co., Ltd., 9 Cir., 83 F.2d 420, certiorari denied 299 U.S. 574, 57 S.Ct. 38, 81 L.Ed. 423.

■ Petitioner insists, however, that the property was valueless and that, if his undivided interest therein had any worth, its value was not in excess of $50, the share of accumulated rentals on the whole tract allocable to his fractional interest. This contention, we think, is unsound for three reasons. First, the real consideration was Vasen's

obligation to develop the property leased, not the nominal rentals. United States v. Sentinel Oil Co., 9 Cir., 109 F.2d 854, certiorari denied 310 U.S. 645, 60 S.Ct. 1095, 84 L.Ed. 1412. The money paid by petitioner brought to him interests in oil and gas properties without regard to their value or their cost to Vasen. Second, this property was not worthless, so long as there existed a prospect that oil or gas might be discovered by drilling deeper and that possibility was not wiped out till later. Third, any amount which petitioner may have contemplated as paid by him for drilling expenses is not ascertainable or severable from the purchase price of the fractional interests. In the absence of any tenable basis on which the contractual sum can be allocated between the fractional interest granted and the promise further to improve that property, petitioner's contention must fail. Berkshire Oil Co. v. Commissioner, 9 T.C. 903, 909.

What has been said disposes of petitioner's further argument that these agreements may be construed to be a "turnkey contract." See, Retsal Drilling Co. v. Commissioner, 5 Cir., 127 F. 2d 355, 357. To be deductible by petitioner in any event, under the option granted by subsection (b) (1) (i), the sum paid must represent intangible costs of drilling and development, not a capital investment.

■ Petitioner's alternative proposition that he is entitled to deduct the $14,000 under the provisions of Section 29.23(m)–16(b) (2) (iv) as the cost of a nonproductive well, is likewise without substance. He has not satisfied the first requirement of this subsection that "a proper election" be made to capitalize drilling costs in the return for the taxable year in which he seeks to take advantage of the option granted thereby. In his return, petitioner elected to "expense," not to capitalize, the claimed deduction. Having so elected, the provisions of this subsection are not available to him. Furthermore, this subsection, like subsection (b) (1) (i), applies only to intangible drilling and development costs, and a deduction is allowed only in the "first taxable year" in which a nonproductive well is completed. The Vasen well was not completed in 1947; drilling was continued in subsequent years until a depth of 20,450 feet was reached.

Petitioner relies on an unfortunate finding by the Tax Court that the well was abandoned "at 13,500 feet." This finding obviously made inadvert use of the word "abandoned" in lieu of the true situation, a "shut down" or "temporary cessation," for it is wholly inconsistent with other findings of the court and is clearly refuted by the proof. Thus, the evidence shows clearly, and the court found, that a depth of 13,500 feet was reached on November 24, 1947, that drilling continued in 1947 until December 24 and that more than a million dollars was expended "in further drilling of the well subsequent to 1947." In the face of these explicit findings, the sentence taken from context by petitioner cannot aid his cause.

■■ What has been said would dispose of this review, were it not for the taxpayer's further contention that, if the $14,000 is not deductible under the provisions of Section 29.23(m)–16(b) of the Regulations, he is entitled to deduct it as a capital loss, on the ground that the property was worthless and the well abandoned at the close of business on December 31, 1947. This issue was not presented to the Tax Court, and, therefore, is not before us. Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L. Ed. 511; General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154; Hotel Kingkade v. Commissioner, 10 Cir., 180 F.2d 310, and cases there cited. However, if we should assume, arguendo, that it is properly before this court, it would not, on this record, aid petitioner's cause. As we have observed, petitioner's position that the venture was abandoned in 1947 is predicated solely on an inadvertent finding taken out of context. The facts clearly demonstrate that there was no completed transaction, with respect to

this property, in that year, on which a loss could be predicated. Missouri-Kansas Pipe Line Co. v. Commissioner, 3 Cir., 148 F.2d 460; United States v. Sentinel Oil Co., 9 Cir., 109 F.2d 854, certiorari denied 310 U.S. 645, 60 S.Ct. 1095, 84 L.Ed. 1412. Consequently, on this record, petitioner sustained no deductible loss in the taxable year. Whether he will be entitled hereafter to a deduction for a loss when he finally disposes of the property interest he acquired is not now before us.

The decision of the Tax Court is affirmed.