G. F. HEDGES, JR., AND MARY HELEN HEDGES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 295–62. Filed February 28, 1964.

*Carl F. Bauersfeld*, for the petitioners.
*John H. Menzel*, for the respondent.

698

OPINION

Petitioners claim that the entire amounts they paid Garretson & Anderson as their share of the drilling and preparation costs on the Lindsay Palmer and Henry Smith leases, being one twenty-ninth ($650) of the total amounts paid by the partnerships or joint ventures to Garretson & Anderson ($18,850) for drilling a well on each of the above leases, and the entire amounts they paid Jackson & Anderson as their share of the drilling and preparation costs on the A. M. Wilkinson lease, being one-sixteenth ($1,000) of the total amounts paid by the partnerships or joint ventures to Jackson & Anderson ($16,000) for drilling each of the wells on that lease, are deductible as intangible drilling expenses under section 263(c) of the 1954 Code.

In the deficiency notice, respondent disallowed as a deduction petitioner's aliquot share of the difference between the amounts paid by the partnerships or joint ventures (hereinafter referred to as partnerships) to Garretson & Anderson and to Jackson & Anderson (both being referred to hereinafter as promoter-operators), as above set out, and the amounts actually paid by the latter to the drilling subcontractors for drilling the wells; and on brief respondent argues that the difference in each instance was paid to the promoter-operators for an interest in the lease, which must be capitalized.

Section 263 (c) provides as follows:

INTANGIBLE DRILLING AND DEVELOPMENT COSTS IN THE CASE OF OIL AND GAS WELLS.—Notwithstanding subsection (a), regulations shall be prescribed by the Secretary or his delegate under this subtitle corresponding to the regulations which granted the option to deduct as expenses intangible drilling and development costs in the case of oil and gas wells and which were recognized and approved by the Congress in House Concurrent Resolution 50, Seventy-ninth Congress.

The regulations required by section 263 (c) have not yet been finalized. Under section 7807 (a) the applicable regulations are therefore section 39.23 (m)–16, Regs. 118, promulgated under the Internal Revenue Code of 1939, which provide:

Charges to capital and to expense in case of oil and gas wells. (a) Items chargeable to capital or to expense at taxpayer's option:

(1) Option with respect to intangible drilling and development costs incurred by an operator (one who holds a working or operating interest in any tract or parcel of land either as a fee owner or under a lease or any other form of contract granting working or operating rights) in the development of oil and gas properties: All expenditures made by an operator for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the operator, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. They include the cost to operators of any drilling or development work (excluding amounts payable only out of production or the gross proceeds from production, and amounts properly allocable to cost of depreciable property) done for them by contractors under any form of contract, including turnkey contracts. * * * Included in this option are all costs of drilling and development undertaken (directly or through a contract) by an operator of an oil and gas property whether incurred by him prior or subsequent to the formal grant or assignment to him of operating rights (a leasehold interest, or other form of operating rights, or working interest) ; except that in any case where any drilling or development project is undertaken for the grant or assignment of a fraction of the operating rights, only that part of the costs thereof which is attributable to such fractional interest is within this option. In the excepted cases, costs of the project undertaken, including depreciable equipment furnished, to the extend allocable to fractions of the operating rights held by others, must be capitalized as the depletable capital costs of the fractional interest thus acquired.

It will be noted that it is expressly provided that drilling costs within the option to deduct intangible drilling expenditures include those which are undertaken by the operator directly or through a contract. Cf. *Commissioner* v. *Ambrose*, 127 F. 2d 47 (C.A. 5, 1942), affirming 42 B.T.A. 1405 (1940) ; *Retsal Drilling Co.*, 42 B.T.A. 1057 (1940), revd. 127 F. 2d 355 (C.A. 5, 1942). The operator is defined as the holder of a working or operating interest, and respondent in this case does not dispute that the partnerships of which petitioner was a member are entitled to deduct intangible drilling expenses. Only the amount of these expenses is in controversy.

Respondent does not contend that any part of the amounts paid by petitioner are allocable to the interests which the promoter-operators acquired in the partnerships so as to fall within the exception provided in the regulation. In other words it is not argued that the promoter-operators acquired their interests in the partnerships in exchange for their undertaking to drill the wells; indeed it is evident from the computations that petitioner was charged only with the proportionate share of the total cost that was attributable to his own interest in the wells,[2] and respondent would allow him to deduct his proportionate share of the total drilling costs. The dispute lies in what constituted the intangible drilling and development costs within the meaning of the statute and the regulations—whether it was the total of the amounts paid by the holders of the working interests to the promoter-operators, or the amounts paid by the promoter-operators to the subcontractors for drilling the wells.

Unlike the earlier case law which did not recognize amounts paid under turnkey drilling contracts as deductible intangible drilling costs, see *Old Farmers Oil Co.*, 12 B.T.A. 203 (1928); *Retsal Drilling Co.* v. *Commissioner*, 127 F. 2d 355 (C.A. 5, 1942), the presently effective regulations specifically include the cost to operators of any drilling work done for them by contractors under any form of contract, including turnkey contracts. Thus, the issue here is narrowed to a question of fact, whether the payments made by petitioner to the promoter-operators were actually paid for the costs of drilling and developing the wells, or were paid partially for drilling and development costs and partially for an interest in the wells. Respondent, citing *Sidney Platt*, 18 T.C. 1229 (1952), affd. 207 F. 2d 697 (C.A. 7, 1953); *Berkshire Oil Co.*, 9 T.C. 903 (1947); and *Manahan Oil Co.*, 8 T.C. 1159 (1947), argues that only those expenses "undertaken" or "incurred" by the petitioner are subject to the option to deduct, and that petitioner undertook or incurred only those expenses incurred in the actual cost of cutting the wells. The balance, claims respondent, must have been paid for interests in the leases or wells. We do not agree.

While it would be much preferable as a matter of proof to have the agreements of the parties in ventures such as these reduced to writing, we are convinced from the oral testimony of the witnesses, which included both petitioner and Anderson, and other evidence that the agreements between the promoter-operators and the various partnerships was that the partnerships would pay the promoter-operators a fixed sum for drilling the wells and completing whatever other work was necessary to bring the wells in. The fact that the promoter-opera-

---

[2] Exclusive of Goff's retained overriding interest.

tors were able to subcontract the work of actually cutting the hole in the ground for less than the amounts they received from the working interests does not limit the drilling and development costs undertaken by the partnership to the amounts paid to the subcontractors. If they contracted to pay independent contractors a fixed amount for drilling the wells and preparing them for production, and paid that amount under the contracts, the amounts so paid were drilling and development expenses to them. The fact that the drilling contractors made a profit on the contracts would not change the situation. *Commissioner* v. *Ambrose, supra.*

The promoter-operators paid nothing for the assignment of the leases to them. The only consideration given by them for the assignments were the overriding royalties and the obligation to drill wells within specified times. The partners, together with the promoter-operators whose partnership or working interests were also chargeable with a part of the cost, put up the money to meet these obligations. There was no reason for the promoter-operators to charge the partnership for an interest in the leases or in the wells. The leases were not assigned to the partnerships and the latter helped pay for the wells. The promoter-operators looked to their own working interests or participations in the partnerships for their income if the leases proved productive and to whatever profit they might make by agreeing to drill the wells for a fixed price. They also ran the risk of losing if the drilling and other costs exceeded the contract price and the well was a dry hole.

Respondent relies heavily on the absence of any written agreement between the partners themselves and between the partnerships and the promoter-operators to support his position that petitioner "undertook" or "incurred," as intangible drilling and development costs, only his proportionate part of the actual cost of cutting the holes in the ground. While, as heretofore noted, the absense of written agreements makes the task of determining the true agreements between the parties more difficult, nevertheless, this method of doing business appears to have been customary in the Spencer area at this time, and the evidence presented here all supports petitioner's claim that the entire amounts he paid to the promoter-operators were for intangible drilling and development costs. They are therefore deductible by petitioners under section 263(c) and the effective regulations.

The cases cited by respondent do not require a contrary conclusion. In *Sidney Platt, supra,* the Court found that under the contract between the taxpayer, who acquired "operating rights" in a well that had already been drilled to a depth of 11,200 feet, and the operator, who was obligated to continue the drilling, the drilling was done by the operator in discharge of his own obligation and not as agent for

the taxpayer. Here we find that petitioner and his coadventurers or partners undertook to drill or at least to finance the drilling of the wells and entered into agreements with the promoter-operators to do this work for them at a fixed price. *Manahan Oil Co.*, *supra*, and *Berkshire Oil Co.*, *supra*, wherein the taxpayers incurred the drilling expenses in exchange for interests in the leases, are distinguishable on their facts, and also involved years prior to the effective date of T.D. 5276, 1943 C.B. 151, which amended the pertinent regulations.

Because of other adjustments agreed to by the parties,

*Decision will be entered under Rule 50.*