No. 3772

Second Circuit

(Second Division)

EDWARDS ET AL. v. CARR ET AL.

(November 18, 1931. Opinion and Decree.)
(December 9, 1931. Rehearing Granted.)
(May 4, 1932. Opinion and Decree on Rehearing.)

Lee & Williams, of Mansfield, attorneys for plaintiffs, appellants.

Parsons & Colvin, of Mansfield, and Craig, Bolin & Magee, of Shreveport, attorneys for appellees M. S. Roscoe and W. T. Daniels.

CULPEPPER, J. Plaintiffs bring this action under the provisions of Act No. 38 of 1908 to test title to the S. E. ¼ of N. W. ¼ of Sec. 11 T. 12 N., R. 13 West, in the parish of De Soto. From an adverse judgment, they have appealed.

David Creswell was the common author of the titles of both plaintiffs and defendants. His title, which emanated from the government, is admittedly good.

Plaintiffs claim the property under the following chain of title out of David Creswell: (1) Deed dated April 1, 1867, duly recorded, from David Creswell to Esther Creswell. (2) Judgment rendered October 18, 1913, in the matter of the succession of Esther Creswell Robertson, deceased, recognizing William Edwards, Lizzie Clay, Ellen Frazier, and Mary Wheeler, the four named plaintiffs, together with Joe Robertson, as the sole heirs at law of Esther Creswell Robertson, and as such placing them in possession of the above-described 40 acres of land. (3) Deed from Joe Robertson, one of above-named heirs, to Ellen Gates, one of the plaintiffs, under date of December 8, 1928, duly of record. (4) Tax deed from Esther Creswell Robertson in 1916 to Roy Thigpen, and a redemption deed by him to the deceased tax debtor's heirs above named.

The defendants are the heirs of Joe T. Brown, deceased, except M. S. Roscoe and W. T. Daniels, which latter named two had cut and removed certain timber from the land under purchase from the Brown heirs. These two have called their co-defendants in warranty. The claim of the defendants to the land is based upon the following chain of title descending from David Creswell: (1) An alleged purchase by Julia Creswell from David Creswell at sheriff's sale on May 2, 1868. (2) Deed from Julia Creswell to Israel Brown, dated December 21, 1869, duly recorded. (3) Deed from Israel Brown to R. P. Brown,

dated December 22, 1871, duly recorded. (4) Deed from R. P. Brown to Joe R. Brown, dated November 27, 1876. (5) Allegation in answer, which is admitted by plaintiffs, showing defendants to be the heirs and assigns of Joe R. Brown, deceased.

Defendants aver they have a title superior to that of plaintiffs, but (quoting) "in the alternative, respondents aver that by virtue of the facts hereinbefore set out, their title for said property has been perfected by the prescription of ten years, which prescription is herein specially pleaded."

Plaintiffs' title deeds on their face appear regular and to have been timely recorded. In the deed, however, from David Creswell to Esther Creswell in 1867, the vendor was represented by J. D. Wemple, as agent, and no power of attorney appears to have been recorded nor produced in evidence. Nevertheless, such defect as this may have caused to Esther Creswell's title has been cured by the lapse of twenty years under the decisions of the Supreme Court in Bedford v. Urquhart, 8 La. 248, and Delabigarre v. Second Municipality of New Orleans, 3 La. Ann. 238. Defendants appear not to seriously dispute that plaintiffs have shown an apparently valid title upon its face, but contend that they have also shown in themselves a valid title, and, furthermore, in addition to such a title, they claim their title is supported by actual possession of ten years, and therefore they claim the ten-year prescription provided by law.

As to the sheriff's sale of the property in May, 1868, defendants contend that the proceeding had in that connection divested Esther Creswell's title to the property and vested same in Julia Creswell. It is contended that this sale was made in the execution of a judgment which recognized Julia Creswell's tacit mortgage against David Creswell, her husband; that this tacit mortgage antedated Esther Creswell's deed from said David Creswell of April 1, 1867; that the mortgage rested against the property at the time Esther Creswell purchased it, and hence Esther Creswell's title thus incumbered could not stand in the way of Julia Creswell's foreclosure of her mortgage.

The facts connected with the tacit mortgage referred to, and of its attempted enforcement, are substantially as follows:

On February 28, 1868, Julia Creswell obtained a judgment in the district court of Caddo parish against her husband, David Creswell, dissolving the community of acquets and gains existing between them and restoring her paraphernal funds used by her husband as far back as 1862 and prior. The judgment recognized Julia Creswell's pre-existing tacit mortgage against her husband's property, and ordered same enforced. A writ of execution was issued under the judgment to the sheriff of De Soto parish, under which the sheriff seized about 800 acres of land as belonging to David Creswell in said parish, among which was the 40 acres in controversy. On May 2, 1868, after advertisement, these lands, so defendants contend, were adjudicated to Julia Creswell. There was and is no deed evidencing a sale or adjudication to any one. The only evidence in this connection is the returns upon the writ. These returns, after setting forth the seizure, advertisement, and offering by the sheriff, read as follows:

"* * * Whereupon Julia being the last and highest bidder, became the purchaser for the price and sum of sixteen hundred dollars."

It is not shown in the record who the

name "Julia" used in the returns referred to; whether to Julia Creswell or some other person of the same Christian name. None of the proceedings had in connection with the obtaining of the judgment, nor of its execution, nor the judgment itself, were ever recorded in De Soto parish until December 14, 1869, at which time a copy of the judgment alone was there recorded. At the time this judgment was obtained and the attempted sale of the property in controversy under its execution, Esther Creswell, plaintiffs' author in title, was the recorded owner thereof under her deed from David Creswell of April 1, 1867. David Creswell was the admitted recorded owner on that date.

It is contended by defendants that, because of the existence of Julia Creswell's tacit mortgage against any and all of David Creswell's property, including the 40 acres in dispute, even though David Creswell had sold this 40, Julia Creswell had the right to have it sold to satisfy her judgment subsequently obtained on her tacit mortgage. In the first place, such a mortgage, we think, would not prevent David Creswell from selling the property, although the mortgage did rest against it at the time. And, secondly, for Julia Creswell to have proceeded legally against this property, since it had gone into the hands of Esther Creswell, a third party with her recorded title, it would have been necessary for her to have resorted to an hypothecary action. She did not do this. Under the law then, as now, such a course was necessary before Esther Creswell could have been divested of her title. Her title certainly could not be divested simply by proceeding against David Creswell after he had sold the property and placed the title of record. It was then, and is now, the law, that only where one holds a conventional mortgage containing

the pact de non alienando that the holder of the mortgage can ignore the sale of the property by the mortgage debtor and subject the property thus burdened by having it sold. Such a course was not taken by Julia Creswell; hence we do not think title to the property was vested in her. This and the other irregularities shown by the evidence in this connection cannot be construed, we think, to show a divestiture of Esther Creswell's prior recorded title. It is our opinion, therefore, that plaintiffs have thus far shown a title in themselves in the 40 acres in controversy that is superior to that of defendants.

Regarding defendants' alternative plea of prescription, the testimony discloses the following character and extent of possession by their predecessors, upon which the plea is based:

The 40 acres in controversy was a portion of a 320-acre tract deeded by Julia Creswell to Israel Brown on December 21, 1869. The evidence shows, and it is so admitted by counsel, that neither Israel Brown nor his successors took actual possession of this 40 acres. It is contended, however, that the evidence does show that the Browns permitted Green Creswell and William Sharp to live on the property for a number of years. While it is true that Green Creswell and William Sharp lived on this land for many years, and possibly the Browns were aware of it, the evidence is clear that the occupancy by Creswell and Sharp was not as tenants of the Browns, either at will or otherwise, but was rather a hostile one to any claims Israel Brown or his successors held upon the land.

Israel Brown sold to R. T. Brown on December 22, 1871, 120 acres of the 320-acre tract. The 120 acres sold was the

S. ½ of N. W. ¼ of Sec. 11 and E. ½ of E. ½ of S. E. ¼ of Sec. 10, Tp. 12 N., R. 13 West. This included the 40 acres in dispute, which is the S. E. ¼ of N. W. ¼ of Sec. 11. Since this 40 was completely segregated in the sale from any of Israel Brown's remaining lands acquired in his deed from Julia Creswell, such possession of this 40 as he might have had by virtue of possession of some of his remaining lands was thereby discontinued. Any possession thereafter of the disputed forty would have to have been by his successor, R. T. Brown. And, after R. T. Brown sold the 120 acres to Joe Brown, November 27, 1876, the latter would have to have possessed the 40, either by actual possession of the 40 or by possessing some portion of the 120 contiguous to the 40. Since it is shown that neither of the Browns ever had actual possession of the 40 in question, they would have to rely on possession of some portion of the 120 contiguous to it. The only portion contiguous to this 40 is the 40 lying immediately west of it, which is the S. W. ¼ of N. W. ¼ of Sec. 11. Any possession which R. T. or Joe R. Brown might have had of the E. ½ of E. ½ of S. E. ¼ of Sec. 10 would not constitute possession of the S. E. ¼ of N. W. ¼ of Sec. 11, the 40 in controversy because the two tracts do not lie contiguous to each other. These two tracts have a common point of contact only, in that the northeast corner of the tract in section 10 corners with the southwest corner of the tract in section 11. But this does not make them contiguous to each other. Lee v. Giauque, 154 La. 491, 97 So. 669. The two tracts are distinct and separate from each other, and, where such tracts of land are conveyed in the same deed from the same person, the rule that possession of a part under title of the whole is possession of the whole has no application to the tract not actually possessed. Gulf Refining Co. v. Jeems Bayou Hunting & Fishing Club, 129 La. 1021, 57 So. 322.

Therefore, unless R. T. Brown, or his successor, Joe R. Brown, took actual possession of the S. W. ¼ of N. W. ¼ of Sec. 11, which is contiguous to the 40 in controversy, the defendant's claim of possession must fall. We find nowhere in the record any evidence to show any such possession by either of the Browns.

Defendants' only witness, Elias Howell, by whom it was sought to prove possession, merely testified that his father rented from Israel Brown, and worked a field on the S. E. ¼ of N. E. ¼ of Sec. 10, the 40 on which the Gulf Refining Company's pump station is now located. The witness later, however, appears to testify that it was the 40 sold to Mr. Herdon which is the S. W. ¼ of N. W. ¼ of Sec. 11. On account of this apparent contradiction, it is difficult to determine which 40 the witness had in mind. The more reasonable view to take is that it was the S. E. ¼ of N. E. ¼ of Sec. 10, because Isreal Brown had sold the Herdon 40 to R. T. Brown. Hence Israel Brown would have had no occasion to rent land to Howell that he had sold. This testimony merely shows that Israel Brown had possession through his tenant, Howell, of one of the 40's which he did not sell to R. T. Brown in 1871. It can in no way relate to any possession by R. T. Brown of any portion of the 120 acres he bought from Israel Brown.

Aside from this, Elias Howell testified that Green Creswell was living on the property in controversy at the time Howell's father moved into the community in 1871, and continued to live on it a long time thereafter. He testified that, after Green Creswell moved off of the land, William

Sharp lived on it, and, after he moved away, no one lived on the property. He states further that the property was commonly referred to as belonging to Esther Creswell. Howell testifies that Mr. Brown (does not state which Brown) claimed to him some time after William Sharp moved away that the 40 belonged to him (Brown) and hired Howell to cut some wood from it during two seasons. But witness states he had never heard of any of the Browns claiming the property before that time.

William Sharp, witness for plaintiff, testified that Green Creswell moved on the 40 right after the Creswell colored people (who belonged to David Creswell) were freed, and that he claimed to own it for a while, and Mr. Joe Brown came and claimed it, that Green Creswell and Mr. Brown "got to squabbling about it," and he (Sharp) went and bought him a home. This clearly indicates that Green Creswell and William Sharp's possession was hostile to Brown. Sharp states that Green Creswell lived on the place over ten years, then left it, and that he (Sharp) lived on it seven or eight years after that. Both periods together would make seventeen or eighteen years, dating from right after the Creswell negroes were freed at end of the Civil War, or to about 1881, or 1882, during which the property was in the possession of Green Creswell and William Sharp, hostile to the claim of Brown. And during all this time, according to this witness, and the plaintiffs' witness, Elias Howell, the property was generally known and referred to throughout the community as that of Esther Creswell. She herself claimed it, as did her heirs after her.

The burden is upon defendants, who have alleged possession, to prove same, and in this we think they have failed. Plaintiffs having shown a title superior to that of defendants, and the latter having failed to prove the possession necessary to overcome by prescription plaintiffs' superior title, the case, we think, is with the plaintiffs. By an agreement between the parties in the record, the value of the timber cut and removed by defendants M. S. Roscoe and W. T. Daniels from the land is of the value of $300. These two defendants have called the other defendants in warranty and prayed for judgment against them for such sum as might be awarded for plaintiffs against said two defendants.

Therefore, for the reasons assigned, the judgment of the lower court is reversed, and there is now judgment in favor of plaintiffs and against defendants, decreeing plaintiffs to be the owners of the property in controversy, and as such entitled to the possession thereof.

It is further decreed that plaintiffs have judgment for, and recover of defendants in solido, the sum of $300, same being for the value of the timber cut and removed from the land by M. S. Roscoe and W. T. Daniels, together with 5 per cent per annum interest thereon from judicial demand until paid.

It is further decreed that the call in warranty herein be sustained, and that there be judgment in favor of M. S. Roscoe and W. T. Daniels, as prayed for by them, against their warrantors, Robert T. Carr, Mrs. Susie H. Guy, Mrs. Alice Jacksons, and E. Preston Brown, the other defendants named herein, individually and in solido, for the sums and amounts respectively cast against said Roscoe and said Daniels.

It is further ordered that the costs be paid one-half by the defendants and one-half by the warrantors.

ON APPLICATION FOR REHEARING

Argued before STEPHENS, CULPEPPER and TALIAFERRO, JJ.

TALIAFERRO, J. Application for rehearing was filed by all defendants. It was granted without restriction and the case has been re-argued and briefed fully. Several assignments of error in our former opinion, 137 So. 637, and decree have been stressed, including the following:

(a) In rendering personal judgment against the defendants who were brought into the case by substituted process.

(b) In holding that Mrs. Guy and her co-heirs (defendants) were responsible to their co-defendants, Roscoe and Daniels, in warranty, for the entire price of sale of timber to said Roscoe and Daniels, notwithstanding other property was included in this sale, for this price, which is not involved in this suit.

The other assignments of error relate to questions raised and argued thoroughly before this court at first trial. All of them were maturely considered and discussed in detail in our original opinion. Further consideration of them has not altered the conclusions formerly reached by us.

It appears that Mrs. Guy is the only defendant, save Roscoe and Daniels, who is before the court through counsel. Her three co-heirs were represented by a curator ad hoc appointed by the court. No personal judgment can be rendered against them under these circumstances.

The timber sold by defendants to Roscoe and Daniels was located on 47 acres of land. The price was $300. The timber was all cut and removed before this suit was filed, 85,000 feet in all, of which 75,000 feet were cut from the 40-acre tract in dis-

pute. It is admitted by all parties that this 75,000 feet had a value of $300. Defendants contend that the measure of their liability on the obligation of warranty to Roscoe and Daniels is to be determined by taking 85,000 feet as a basis. They are correct, because they sold this quantity of timber for $300. On a proportionate basis they received $264.75 for the 75,000 feet. As Roscoe and Daniels actually cut and removed the timber, they are liable in solido to plaintiffs for its value. The liability of defendants on their warranty to Roscoe and Daniels is several.

For the reasons herein assigned, the judgment of the lower court is reversed, and there is now judgment in favor of plaintiffs and against defendants decreeing plaintiffs to be the owners of the land in controversy and as such entitled to possession thereof.

It is further decreed that plaintiffs have and recover judgment against defendants M. S. Roscoe, W. T. Daniels, and Mrs. Susie H. Guy, in solido, for $300, with legal interest thereon from judicial demand until paid.

It is further ordered and decreed that the call in warranty herein be sustained as against Mrs. Susie H. Guy and, for the reasons herein given, there is judgment in favor of said M. S. Roscoe and W. T. Daniels and against her for $66.19, with legal interest from judicial demand. The rights of Roscoe and Daniels as against the other warrantors is reserved to them.

It is further ordered that costs of suit be paid by defendants Mrs. Susie H. Guy, M. S. Roscoe, and W. T. Daniels.

And as amended hereby our original opinion and decree is reinstated and made the final judgment of the court.