F. H. E. OIL COMPANY (A DISSOLVED CORPORATION), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FLEMING-KIMBELL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 111575, 548.    Promulgated January 13, 1944.

*Harry C. Weeks, Esq.*, for the petitioners.
*Frank B. Appleman, Esq.*, for the respondent.

22

OPINION.

HILL, *Judge*: We are first called upon to determine whether petitioners are entitled to deduct from income in each of the taxable years in question "intangible drilling and development costs" incurred in the drilling of nine oil wells on leased property. The amounts expended are not in controversy. Petitioners assert that Regulations 101, section 23 (m)-16,[1] and the identical provision of Regulations 103, granting to them an option to deduct such expenditures or to charge them to capital, apply in this proceeding. If they do, then petitioners must prevail, for they previously exercised the option in favor of deducting intangible drilling and development costs. However, respondent contends that the option does not extend to such costs incurred under the facts here, on the ground that the drilling and completion of the wells in question were a part of the consideration for the acquisition of rights under the several leases and assignments.

Thus, we have a clear-cut issue and one which is new only as it bears upon the particular facts which are here before us. The principle to be applied is settled. It is well stated in *Hardesty* v. *Commissioner*, 127 Fed. (2d) 843, as follows:

The ultimate question for decision, therefore, is whether or not the oil wells drilled in this case were drilled as consideration for the assignment of the undivided interests in the oil properties; for if they were drilled as consideration for the assignment, the drilling and development costs are not deductible under the regulation but must be treated as a capital expenditure. * * *

The answer to this question has recently been held determinative under similar facts in *Hunt* v. *Commissioner*, 135 Fed. (2d) 697; *Stansylvania Oil & Gas Co.* v. *Commissioner*, 135 Fed. (2d) 743; and *Walsh* v. *Commissioner*, 135 Fed. (2d) 701. So it is in the present proceeding.

Petitioners first attack the principle itself and the conclusions reached in the above cited cases which support it. They argue that there exists no basis for an exception in instances where drilling is performed as a part of the consideration for capital interests acquired. Hence, they say, cases refusing the option in such instances are

---

[1] ART. 23(m)-16. *Charges to capital and to expense in the case of oil and gas wells.*—
(a) Items chargeable to capital or to expense at taxpayer's option:

(1) Option with respect to intangible drilling and development costs in general: All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells, and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. * * *

(2) Option with respect to cost of nonproductive wells: In addition to the foregoing option the cost of drilling nonproductive wells at the option of the taxpayer may be deducted from gross income for the year in which the taxpayer completes such a well or be charged to capital account returnable through depletion and depreciation as in the case of productive wells.

incorrectly decided and should not be followed. We are not impressed by this contention.

Petitioners' further contentions are advanced upon the premise that the *Hardesty* case and the others in its line apply solely to instances where drilling is expressly stated in the lease instrument as constituting a consideration for the property rights which passed thereunder. Proceeding upon this premise, petitioners seek to distinguish the facts here except as to their acquisition of interests in 15.4375 acres of the McKinzie tract from McMeans, King, Madigan, and Cheatham. Save as noted, petitioners allege, in short, that under the terms of each instrument in evidence they were not obligated to drill; that they could not be forced to respond in damages for failure to drill; and that drilling provisions were conditions subsequent, the failure to perform which merely resulted in the divesting of title to property which had vested in them upon the execution of the particular instrument. They urge these circumstances as taking the case without the ambit of the *Hardesty* case and the rule there applied and, conversely, as placing it within that of Regulations 101, section 23 (m)–16, *supra*.

Petitioners' contentions beg the question. As we have indicated, the determinative inquiry to be made is whether the drilling of the wells constituted a part of the consideration for the interests which petitioners acquired in the several tracts. This inquiry is not limited to a casual examination of the leases and assignments to ascertain if the parties therein expressly stated that drilling was "consideration" for the grant. Nor can the question be resolved by noting that the drilling provisions have the aspect of conditions rather than covenants or promises. A conclusion based upon this distinction would exalt words over substance. Moveover, the answer is not dependent upon whether the leasehold interests be regarded as vesting upon the execution of the leases or assignments, subject to defeasance for non-performance of conditions, or upon the completion of wells upon each of the leased tracts.

In *United States* v. *Sentinel Oil Co.*, 109 Fed. (2d) 854, the court said:

Appellee attempts to distinguish the *State Consolidated* case from the instant one, by the fact that in the former case title to the property was not to pass until after the property owner had received his $1,400 from the proceeds of the well, while in the instant case title passed upon the execution of the contract. We do not think that this distinction changes the situation. In both cases the drilling expenditures were the consideration for the passing of title to the land.

We do not understand the *Hardesty* and other recently reported decisions as requiring varying answers contingent upon variables in terminology used in the leases. Petitioners err in assuming that they stand for any such amorphous distinction. While it may be true that

the instruments considered in these cases did contain express provisions to drill, the decisions were based, as we have said, upon the fact that the drilling was a consideration for the interests acquired, not upon the formalities of conveyancing.

With the foregoing explanation of the principle involved and the contentions of the parties, we come to a consideration of the real question. The several leases and assignments through which petitioners claim to have acquired rights and interests in the first seven tracts listed in the findings of fact may be considered together. In each instance the property was leased for the purpose of mining and operating for oil and gas and for a purely nominal consideration. In each instance the instrument contained a clause which provided, in substance, that unless the petitioners commenced an oil well within a certain number of days and diligently prosecuted the drilling to completion the lease and assignment would terminate as to both petitioners and their grantors. These instruments, consequently, fall within the category of the "unless" form of lease which terminates *ipso facto* upon the failure to exercise the option granted. *Bowes* v. *Republic Oil Co.* (Mont., 1927), 252 Pac. 800. The usual "unless" lease contains a provision entitling the lessee to extend the time during which he must drill to avoid termination by the payment of a specified rental. However, no so-called delay rental clauses are here involved. Such a printed clause was deleted in one of the leases covering the Standard of Kansas tract and was expressly subordinated to the typed drilling provision in the other. Although not so stated in the lease, construction requires that the printed delay rental provision be held subordinate to the typed drilling provision in the lease involving the First National Bank tract. *Habermel* v. *Mong*, 31 Fed. (2d) 822. None of the other instruments contain a delay rental clause. In view of the expressed limitation of the grants, the nominal consideration, the provisions for drilling within a period measured in days. and the refusal to accord options to extend the period by the payment of rentals, it appears obvious that the primary purpose of these leases and assignments was to procure the drilling of wells to test the underlying structure for oil. It can not be gainsaid that the essence of the consideration for such leases and assignments was the drilling of the wells in question. *Chi.-Okla. Oil & Gas Co.* v. *Shertzer* (Okla. 1924), 231 Pac. 877; *Investors' Utility Corporation* v. *Challacombe* (Tex., 1931), 39 S. W. (2d) 175.

The same conclusion obtains when the question is approached from the petitioners' standpoint. In this view it is necessary to determine what interests petitioners had in each tract. as grantees, after the date of each lease or assignment but before a well was completed on the tract. As we have indicated above, petitioners contend that they

had a fee interest, subject to termination upon breach of condition subsequent and, since they were thus drilling upon their own property, that the deduction for intangible drilling costs must be allowed. However, petitioners misconceive the legal effect of their "unless" leases and assignments. These instruments did not confer upon petitioners a title to the several tracts, but merely gave to them a privilege of going upon the land for the purpose of drilling a well. The effect of the "unless" lease with a delay rental clause was stated by the Circuit Court of Appeals for the Fifth Circuit in *Gillespie* v. *Bobo*, 271 Fed. 641, wherein the court said:

Such instruments as the one in question have been passed on frequently by the courts of Texas. It is well settled by the decisions of those courts that such an instrument confers on the so-called lessee a privilege for the specified time. with the option to secure the extension of the privilege for an additional period upon complying with the prescribed condition, and that time is of the essence of such a provision as the one above set out. *Ford* v. *Barton* (Tex. Civ. App.) 224 S. W. 268: *Bailey* v. *Williams*, (Tex. Civ. App.) 223 S. W. 311; *Young* v. *Jones* (Tex. Civ. App.) 222 S. W. 691; *Ford* v. *Cochran* (Tex. Civ. App.) 223 S. W. 1041. * * *

The court in that case further said:

* * * The consequence of a failure to do what is required to acquire a right or thing is not a forfeiture of it. * * * The equitable rule as to relieving against forfeitures has no application to the case of a failure of a holder of an option to do, within the fixed time, what is required to acquire the thing which is the subject of the option. Equity does not undertake to dispense with compliance with what is made a condition precedent to the acquisition of a right.

The instruments here conferred merely the same rights upon petitioners as the lease involved in the *Gillespie* case gave to the lessee, less the option to secure an extension of time. Petitioners had no capital interest in the property until the wells were commenced and completed in accordance with the terms of the drilling provisions. It follows that such provisions could not be conditions subsequent terminating an interest theretofore obtained. The Supreme Court of Texas takes a like view. In *Waggoner Estate* v. *Sigler Oil Co.*, 19 S. W. (2d) 27, 30. that court said:

A clause similar to the first [this clause provided that if no well was commenced on the land on or before June 1, 1919. the lease should terminate as to both parties] was referred to in a dictum in *Texas Co.* v. *Davis*, 113 Tex. 331. 254 S. W. 304. 255 S. W. 601, as creating a condition subsequent. that effect having been ascribed to it by distinguished counsel on both sides, and by the learned judges writing the majority and minority opinions in the Court of Civil Appeals (232 S. W. 549). This may have arisen from failure to recognize a distinction between the customary "drill or pay" clause and the "unless" clause. The clauses under consideration in the *Davis* case and here come within the class of "unless" clauses. The correct rule seems to be that. while the usual "drill or pay" clause in an oil lease does introduce a condition

subsequent, for the benefit of the lessor alone, yet, as said by Mr. Summers, "where the 'unless' drilling clause is used, a failure of the lessee to drill or pay a stipulated sum of money ipso facto terminates the lease, without the necessity of re-entry, action or their equivalents by the lessor. For this reason the interest created in the lessee by such lease cannot be one terminable by breach of condition subsequent. * * *" * * *

In that case the Supreme Court of Texas further clearly indicates the determinative characteristic of a condition subsequent as applied to oil and gas leases as follows: "As stated in Justice Bonner's opinion, under a limitation the estate granted is automatically terminated on the happening of stipulated events, while under a condition subsequent the lessor has the election to terminate or continue the contract after breach of the condition."

Under the "unless" provision of the leases and assignments in the instant proceeding the failure to perform the condition to drill would *ipso facto* terminate the contract as to both parties. In such event the lessor or assignor would have no right of election to terminate or to continue the contract. Hence, such condition was not a condition subsequent.

In *Chi.-Okla. Oil & Gas Co.* an oil and gas lease required the drilling of a test well within a specified time and provided that the failure so to drill would *ipso facto* terminate the lease. The Supreme Court of Oklahoma stated in its opinion therein that:

As the right of the lessee to the possession of any part of the lands depends upon his entry for the purpose of prospecting for the minerals, the mere grant of such right by the terms of the lease does not operate, *in praesenti*, to vest an estate in the lands in the lease. *Lowther Oil & Gas Co.* v. *Miller-Sibley Oil Co.*, 53 W. Va. 501, 44 S. E. 433, 97 Am. St. Rep. 1027.

The quoted pronouncement of the Oklahoma Supreme Court is applicable to the facts here. It follows that the vesting of an estate under the lease there involved and similarly under the leases and assignments here involved occurred only upon the performance of the condition to drill the test well. Such condition was, therefore, not a condition subsequent to the vesting of title but was a condition precedent to such vesting. It is obvious that there can be no divestiture of title by the failure to perform a condition the performance of which is necessary to the vesting of title.

We think it clear that the right to oil and mineral in place, obviously a capital asset, accrued to petitioners under each "unless" instrument only upon the drilling of the well. The exercise of the privilege to drill was the assumption of the obligation to drill, the performance of which was the primary consideration for the leasehold interest in each tract. Petitioners drilled not to prevent the loss of something already acquired or to avoid liability for damages, but to acquire the thing for which the drilling was required as consideration, namely,

title to oil in place. Since the intangible drilling and development costs here involved arose in connection with the drilling of the first well on each tract, it is apparent from the foregoing discussion that they form a part of the consideration for and constitute capital expenditures in the acquisition of the First National Bank, Standard of Kansas, Dodge, M. K. Carter, A. W. Johnson, Burkitt, and Betz-Robinson tracts. Accordingly, such costs may not be deducted but can be recovered only through depletion allowances. *Hardesty* v. *Commissioner, supra; Hunt* v. *Commissioner, supra; Walsh* v. *Commissioner, supra; Hugh Hodges Drilling Co.*, 43 B. T. A. 1045; *Nunn-Stubblefield Oil Co.*, 31 B. T. A. 180.

We next consider the question in relation to the drilling of the dry hole on the Monnig tract. In each instance the assignment to petitioners was not executed until after they had drilled on the property. Petitioners drilled to enjoy the avails of a contract whereby the first parties *agreed* to assign their leasehold interest in the tract provided petitioners performed a positive undertaking to drill. Performance was required in order to obtain any interest in the tract which was the subject of the contract. In the final analysis the position of the parties was practically identical to that existing in respect to the "unless" type instruments. Under the latter, leasehold interests automatically became vested in petitioners when the drilling requirement was performed, while here the passing of title was contingent upon the execution of a further instrument, the assignment itself. However, in both cases, petitioners were entitled to no interest in oil in place until a well was drilled. Clearly, the drilling of the well on the Monnig tract also was a consideration for the interests acquired. See *Nunn-Stubblefield Oil Co., supra,* wherein the material facts are undistinguishable from those here giving rise to the Monnig leasehold.

Petitioners contend that the rule of the *Hardesty* case does not apply where the well turns out to be as here a dry hole. There is no merit to this contention. *United States* v. *Sentinel Oil Co., supra.* Regardless of the outcome, the drilling operation was undertaken as a part of the consideration for the assignment of the lease. The option accorded by the regulations to expense the cost of nonproductive wells extends only to situations in which such a well is drilled by the taxpayer on land in which he has a fee interest.

The instruments in evidence to sustain the deduction claimed respecting the McKinzie tract present a different picture. By the agreement dated November 4, 1938, petitioners specifically agreed to commence and continue a well as part of the consideration for the assignment of interests in 11.25 acres. Petitioners were released from the obligation as to two acres three days later. Drilling was likewise expressly made a consideration for the assignment of H. F. Cheatham's interest in 6.1875 acres of the McKinzie tract. Hence, in respect of

15.4375 acres in this tract petitioners clearly drilled the well as a consideration for the acquisition of a capital asset and petitioners concede as much. None of the other instruments in evidence, however, contain any reference whatever to drilling. Accordingly, petitioners contend that they need capitalize only so much of the intangible drilling costs of the McKinzie well as 15.4375 bears to 67.5. This contention is based upon the theory that their interests in the McKinzie tract embraced a total of 67½ acres and is made in reliance on *Hunt* v. *Commissioner, supra.*

The difficulty in following petitioners lies not with their general proposition, but in the state of the record. It is elementary that the burden of showing the respondent's determination to be erroneous falls upon the petitioners. Among other facts, petitioners here were each obliged to establish that they had an interest in each tract upon which they drilled; that the drilling was not consideration for the interests acquired; and, with respect to the McKinzie tract which raises the apportionment issue, the numerator and denominator of the ratio to be applied. To establish these matters in connection with the McKinzie tract petitioners offered in evidence 11 instruments, all of which were received. One was an oil lease covering a seven-sixteenths interest in a 67½-acre tract. However, this interest was granted to Carter & Gragg Oil Co., a partnership. There is nothing in the record which purports to show that petitioners acquired any interest whatever in this portion of the 67½-acre tract from Carter & Gragg, or anyone else. We can not indulge in an assumption that they did. Of the remaining 10 instruments, 3 were assignments of a one-tenth interest in a certain lease by which Alice McKinzie leased her undivided interest in the 67½-acre tract. Two instruments were assignments of a one-third interest in a certain lease by which other parties leased their undivided interest in the 67½-acre tract. We do not know the extent of the original lessors' interests in the tract, however, since the leases themselves were not offered in evidence and no testimony was given on this point. Consequently, we are unable to determine what interests petitioners obtained. Moreover, a one-sixteenth interest in the 67½-acre tract is altogether unaccounted for. It is obvious that proof of the denominator of the apportionment ratio is lacking to such a degree as to make any figure a mere guess. In these circumstances we must sustain respondent.

Furthermore, it is at once apparent that petitioners have failed to prove a right to expense the intangible cost of the McKinzie well upon a totally different ground. As we have stated, several of the assignments contained no drilling provision. Upon this fact alone is based petitioners' contention that drilling could constitute no part of the consideration for the interests thus acquired. But as assignees of a lease petitioners acquired no greater rights than those of their assignor

thereunder and were subject to all the obligations, conditions, and considerations imposed by the lease upon the assignor. None of the leases in relation to the McKinzie tract, except the lease to Carter-Gragg Oil Co., were offered in evidence and no evidence was offered as to the provisions thereof. Not having the information which such evidence would afford for consideration in connection with the provisions of the intervening assignments of the leases, we have no factual basis upon which to determine whether it is permissible under the regulations in question to expense the intangible drilling costs of the well drilled on such leased premises. We can not, therefore, hold that respondent erred in denying the applicability of such regulations in respect of the drilling of such well.

This observation applies also to the state of the proof respecting petitioners' acquisition of interests in the A. W. Johnson, M. K. Carter, Burkitt, Betz-Robinson, and Monnig tracts. In each instance the assignments covering these properties themselves contained drilling provisions which, as we have held, required drilling as a part of the consideration for the capital assets which petitioners acquired. This suffices to support our conclusion as to the drilling expenses on these tracts. However, had these assignments been silent regarding drilling or had drilling provisions therein been of a character not bringing them within the rule of the *Hardesty* case, we would still be obliged to approve the respondent's determination disallowing deductions for the intangible costs of the wells on these tracts, since neither the underlying leases nor their provisions are before us.

F. H. E. was not a lessee under the lease conveying interests in the First National Bank tract. Fleming-Kimbell was not mentioned in the assignment of the leasehold interest in the Betz-Robinson tract. No evidence was offered to supply the missing links. Nevertheless, F. H. E. claimed a deduction for intangible drilling expenses in connection with the First National Bank well and Fleming-Kimbell claimed one for similar expenses in connection with the Betz-Robinson well. It can not be said, and in fact is not contended, that such expenses are deductible on the theory that petitioners, in the named instances, were merely acting as contractors drilling for others and so entitled to a business expense deduction, for petitioners did not actually do the drilling. The drilling was contracted by them, not to them. Such expenses are not deductible by F. H. E. in respect of the well on the First National Bank tract nor by Fleming-Kimbell in respect of the well on the Betz-Robinson tract, because of failure to prove an interest, respectively, in such tracts.

For the reasons discussed above we hold that petitioners are not entitled to expense the intangible drilling and development costs connected with any of the nine wells.

The second question in this proceeding is whether charitable contributions made by Fleming-Kimbell during the taxable year ended April 30, 1939, are to be deducted from gross income from the property in computing the limitation on percentage depletion pursuant to section 114 (b) (3) of the Revenue Act of 1938. Respondent claims that they are, while petitioners contend to the contrary.

The statute provides that the allowance for percentage depletion shall not exceed 50 per cent of the net income of the taxpayer from the property (computed without allowance for depletion). The Commissioner has issued a regulation [2] defining the term "net income of the taxpayer from the property" for the purposes of this limitation. It requires that "gross income from the property" be reduced by the allowable deductions *attributable to the mineral property* upon which the depletion is claimed. *Montreal Mining Co.*, 2 T. C. 688. It does not provide that gross income must be reduced by all the deductions which may be allowed the taxpayer by statute. The answer here turns upon whether the charitable deductions in question are attributable to Fleming-Kimbell's oil properties.

We do not think that they are so attributable. To be deductible as ordinary and necessary expenses under section 23 (a) of the Revenue Act of 1938, charitable contributions must have in a direct sense a reasonable relation to the business of the taxpayer corporation. However, the respondent makes no contention that the charitable contributions involved here were so closely related to Fleming-Kimbell's business as to make them deductible under section 23 (a). On the contrary, the parties seem to assume that the instant charitable contributions are of the character deductible only by virtue of section 23 (g) of the Revenue Act of 1938, which permits the deduction of certain contributions up to a limited amount regardless of their connection with a corporate taxpayer's business. Charitable contributions thus deductible do not appear to constitute deductions *attributable to the mineral property* upon which depletion is claimed within the meaning of the quoted regulations. On this issue, we sustain the petitioner.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

DISNEY, *J.*, dissents.

---

[2] ART. 23 (m)–1. *Depletion of mines, oil and gas wells, other natural deposits, and timber; depreciation of improvements.—*

\* \* \* \* \* \* \*

(h) "Net income of the taxpayer (computed without allowance for depletion) from the property," as used in section 114 (b) (2), (3), and (4) and articles 23 (m)–1 to 23 (m)–28, inclusive, means the "gross income from the property" as defined in paragraph (g) less the allowable deductions attributable to the mineral property upon which the depletion is claimed \* \* \* including overhead and operating expenses, development costs properly charged to expense, depreciation, taxes, losses sustained, etc., but excluding any allowance for depletion. Deductions not directly attributable to particular properties or processes shall be fairly allocated. \* \* \*

BLACK, *J.*, dissenting: The majority opinion, after discussing the legal effect of oil leases which contain the "unless" clauses and the oil wells which have been drilled thereunder, concludes: "It is apparent from the foregoing discussion that they form a part of the consideration for and constitute capital expenditures in the acquisition of the * * * tracts. Accordingly, such costs may not be deducted but can be recovered only through depletion allowances." (Citing cases.)

I agree that such expenditures are capital expenditures but the very purpose of article 23(m)–16 of Treasury regulations printed in the margin is to give the taxpayer the option of either deducting as a business expense the intangible drilling costs incurred in drilling a producing oil well which he owns, or to capitalize such intangible drilling costs to be recovered through depletion.

I think a producing oil well is a capital asset to a taxpayer who brings it in and owns it, whether he does it on land which he owns in fee simple, or on land which he has leased for development with an affirmative obligation to drill one or more wells in his program of development, or on land which he has leased with a mere option to drill within a given time and the lease to be forfeited *unless* he does drill, or on land where the lease contains no specific provisions at all as to when development shall begin. A producing oil well in all the cases which I have enumerated is a capital asset in the hands of the owner, I think, and just as much so in the one case as in the other. It seems to me that article 23(m)–16 is broad enough to include within its provisions all the cases I have mentioned above and I dissent from the view that it should be denied application to wells drilled under the circumstances which exist in the instant case.

I further dissent from that part of the majority opinion which would deny the right to deduct intangible drilling costs to F. H. E. in respect of the well on the First National Bank tract and to Fleming-Kimbell in respect of the well on the Betz-Robinson tract, on the further ground of failure to prove an interest, respectively, in such tracts. I do not understand that the Commissioner either in his deficiency notice or at the hearing of these proceedings made any contention that petitioners were not the joint owners of the wells which they drilled on the two leases thus mentioned, in the drilling of which they incurred the intangible drilling costs which they here seek to deduct. The Commissioner makes no such contention in his brief. The issue as presented by the parties was whether under the drilling clauses of the leases—not only the First National Bank lease and the Betz-Robinson lease, but the other leases in evidence—petitioners were entitled to deduct their intangible drilling costs as business expenses, they having elected so to do in prior years, or whether they must

capitalize them. That was the only issue between the parties on this phase of the case, as I understand it, and I think it is a mistake for the majority opinion to hold there was a failure of proof as to ownership of the oil wells in these two particular instances.

MELLOTT and HARRON, *JJ.*, agree with this dissent.