BERKSHIRE OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9382. Promulgated November 6, 1947.

904

*James H. Yeatman, Esq.*, for the petitioner.
*Frank B. Schlosser, Esq.*, for the respondent.

906

JOHNSON, *Judge*: 1.—By section 19.23 (m)–16, Regulations 103, a taxpayer engaged in the development and operation of oil and gas wells is given an option to charge intangible drilling and development costs to capital or to expense. Acting under this section, petitioner elected to charge such costs to expense, and on its income tax returns for 1941 and 1942 it deducted those incurred in drilling the producing wells on the Ward and Yule leases in those respective years. The Commissioner disallowed the deductions and here defends his action on the ground that the option is not applicable to the cost of drillings required in contracts whereby drillings and the completion of wells are consideration for acquisition of the mineral property developed, because in such cases the cost is a nondeductible capital investment in the property. He cites a number of cases so holding.

The option is not new, having been granted in corresponding sections of prior regulations since 1918. See art. 223, Regulations 45. In 1933, however, the Circuit Court of Appeals for the Ninth Circuit held, in *State-Consolidated Oil Co.* v. *Commissioner*, 66 Fed. (2d) 648, that it was not available "to one who drills a well upon land in performance of a contract to purchase an interest therein." And, following that precedent, the Fifth Circuit, in *Hardesty* v. *Commissioner*, 127 Fed. (2d) 843, likewise denied the taxpayer's right to deduct drilling costs so incurred as an expense, reasoning that if wells "were drilled as consideration for the assignment, the drilling and development costs are not deductible under the regulation but must be treated as

capital expenditure. * * *" The Fifth Circuit has consistently adhered to that view, *Hunt* v. *Commissioner*, 135 Fed. (2d) 697; *F. H. E. Oil Co.* v. *Commissioner*, 147 Fed. (2d) 1002; motion for rehearing denied, 149 Fed. (2d) 238; second motion for rehearing denied, 150 Fed. (2d) 857; *King Oil Co.* v. *Commissioner*, 153 Fed. (2d) 690, and this Court has applied it in recent decisions. *F. H. E. Oil Co.*, 3 T. C. 13; affd., 147 Fed. (2d) 1002; *Alex McCutchin*, 4 T. C. 1242; affd., 159 Fed. (2d) 472; *Herndon Drilling Co.*, 6 T. C. 628; *Manahan Oil Co.*, 8 T. C. 1159.

Recognizing that its contention has been judicially rejected, petitioner urges a reconsideration of the issue in view of the promulgation of T. D. 5276, 1943 C. B. 151, approved June 25, 1943, amending the provisions in controversy as they now appear in section 29.23 (m)–16 of Regulations 111, and in view of Concurrent Resolution 50, of July 21, 1945 (79th Cong., 1st sess., 59 Stat. at Large 844), recognizing and approving the provisions of section 29.23 (m)–16, Regulations 111, and corresponding provisions of prior regulations. We are of opinion that no reconsideration is necessary. T. D. 5276 is applicable to years beginning after December 31, 1942, and hence does not apply here. The Circuit Court of Appeals for the Fifth Circuit said in *F. H. E. Oil Co.* v. *Commissioner, supra:*

> * * * the Regulation in giving an optional expense deduction cannot prevail against the fact that a capital investment, an "improvement or betterment of the estate or property" has been made, for by the statute the cost of such cannot be deducted as an expense * * *.

In an opinion denying the second motion for rehearing in *F. H. E. Oil Co.* the same court held that the resolution did not enlarge or extend the regulation. On the authority of the above cited decisions, we reject petitioner's contention.

Petitioner argues further, however, that a decision in its favor would not conflict with the decisions cited (a) because it intended to drill wells promptly in any event and hence the contractual requirement to do so was immaterial and (b) because it paid for the leases a substantial amount of cash, which constituted the "essence" or "primary" part of the consideration while the "drilling clause was as a practical matter, ineffectual." We see no merit in these arguments. The obligation to drill and the payment of cash are each impressed with the character of consideration by the terms of the leases; and this character is in no way altered or affected by their relative importance or by petitioner's intention to drill promptly, regardless of its obligation to do so.

2.—Petitioner contends in the alternative that if the intangible drilling and development expenses are to be treated as a part of the cost of the leases, they should be treated as purchasing a proportionate part of the lease interest and the remainder of such interest should be

treated as acquired for cash. Since the driller is entitled to charge to expense intangible development costs incurred on a lease acquired for cash, it is argued that the expenses should be ratably allocated between the interest acquired by drilling and the interest acquired by cash, and the amount allocated to the cash-acquired interest should be recognized as a deductible expense. *Hunt* v. *Commissioner, supra,* is cited in support of the contention.

The theory advanced is subject to the obvious objection that petitioner would deduct as expense a part of the amount already capitalized as cost. But even under a computation that would avoid such overlapping, the theory can not be accepted and is not supported by the cited case. *Hunt* v. *Commissioner, supra,* supports the proposition that a taxpayer who acquired a one-half interest in a lease from one transferor for cash and the other half interest from another transferor in consideration of the drilling of a well is entitled to deduct as expense one-half of the drilling costs, but not the other half, which is to be regarded as consideration paid for the latter half interest in the lease. Petitioner acquired the whole interest in its leases from the same transferors under contracts which did not purport to convey any specified part for cash. As an integral part of the total consideration paid for the leases, the intangible drilling costs here in controversy must be treated as capital investments in their entirety, and hence no part of them may be deducted as applicable to some part of, or undivided interest in, the leased premises acquired exclusively for cash. *King Oil Co.* v. *Commissioner, supra.* The Commissioner's disallowance of the full amount of the intangible drilling and development costs is sustained.

3.—In 1942 petitioner drilled a dry hole on lot 11 of the Ward lease at a cost of $11,354.93, and in December of that year released to Ward all rights in this lot and in lot 10, on which no well had been drilled. Of the area covered by the Ward lease, lots 10 and 11 are contiguous on one side; lots 1 and 7 (on both of which producing wells were drilled) have only one corner point of contact with other lots of the lease. On its 1942 income tax return petitioner deducted the $11,354.93 drilling costs and also $16,035.75 as representing the cash cost applicable to the acreage surrendered by the release. The Commissioner allowed deduction only of the drilling cost, and by affirmative plea now alleges error in so doing. Petitioner contends that it is entitled to deduct both, but reduces its claim as to cash cost to $15,560.05.

Under section 23 (f) and (i) of the Internal Revenue Code petitioner may deduct a loss, computed by use of the basis as fixed by section 113 (a) and (b), in respect of "the property." Petitioner argues that the four lots covered by the Ward lease constituted three properties, consisting of lot 1 and lot 7, which had only a corner point in

common with another lot, and lots 10 and 11, which were contiguous on one side, and that, in releasing lots 10 and 11 after drilling a dry hole, it disposed of "a property" at a loss equal to its cost. Respondent contends that the four lots of the Ward lease constituted one property, having a unitary basis, which includes the intangible drilling and development costs of all wells drilled on any of the lots, and that a loss deduction may not be taken when a portion of the acreage was abandoned, but must await final disposition of the lease. The issue for decision is thus narrowed to whether petitioner acquired by the Ward lease one property or three.

The same question has often arisen in connection with the unit on which the depletion of oil and other mineral properties may be taken. Article 221 of Regulations 69 defined "the property" as "separate tracts or leases of the taxpayer." Its provisions were approved by the Circuit Court of Appeals for the Fifth Circuit in *Vinton Petroleum Co.* v. *Commissioner*, 71 Fed. (2d) 420; certiorari denied, 293 U. S. 601, and, in *Sneed* v. *Commissioner*, 119 Fed. (2d) 767; certiorari denied, 314 U. S. 686, the same court reiterated its approval, saying: " * * * 'the property' means generally each separate tract, if operated by the owner, or each separate lease if leases are made. * * * " To the same effect are *Allie M. Turbeville*, 31 B. T. A. 283; affd. (C. C. A., 5th Cir.), 84 Fed. (2d) 307; certiorari denied, 299 U. S. 581; *William H. Cree*, 47 B. T. A. 868. In the cited cases, however, the court's attention was focused rather on the division of a single tract into separate depletion units by virtue of leases of parts of it to different lessees, while here we are confronted with the division of a single lease into separate property units because the lease allegedly covered separate tracts. As the cases cited are explicit in regarding a separate tract as "a property," we perceive no reason to modify the definition where a taxpayer acquired an interest in more than one separate tract by a single deed of conveyance.

We are of opinion, moreover, that the acreage covered by the Ward lease must be treated as three separate tracts and, therefore, three separate properties, one of which petitioner disposed of in 1942. Lots 10 and 11, having a common side, obviously formed one tract, but lot 11 had only a corner point of contact with lot 7, which had only a corner point of contact with lot 1. In *Anvil Hydraulic & Drainage Co.* v. *Code*, 182 Fed. 205, the Circuit Court of Appeals for the Ninth Circuit held that "Two tracts of land which touch only at a common corner are not contiguous." And, following this view, the Supreme Court of Louisiana, in *Lee* v. *Giauque*, 154 La. 491; 97 So. 669, refused to regard lots touching at a single point as parts of one tract, saying:

* * * to constitute a single tract of land the lands must be so situated that one may pass from one part to the other without passing over the lands of another. * * *

To the same effect are *Edwards* v. *Carr*, 19 La. App. 827; 137 So. 637; *Mandel* v. *McAnn*, 16 La. App. 125; 133 So. 477. Indeed, the Commissioner so recognized in G. C. M. 22106, 1941–1 C. B. 245, wherein separate tracts were defined as two pieces of land "separated geographically" and the term "property" as the taxpayer's interest "in each separate tract." In a list of examples, a single owner who by one deed acquired three noncontiguous tracts of mineral land for a single consideration was deemed to have acquired three properties because "A 'property' requires one continuous boundary."

Respondent stresses the provision in the lease instrument that the property conveyed "shall be deemed to be one single, contiguous and continuous body or tract of land," and argues that, as petitioner "has treated the lease as one property within the meaning of section 19.23 (m)–1 (i), Regulations 103, it should not be permitted to make a contrary contention now. The quoted lease provision is not determinative of either the facts or the law controlling, and the cited section of the regulation does not purport to give the taxpayer an election to join separate tracts, but merely to treat two or more "mineral properties * * * in a single tract" as one property or more. We do not find, moreover, that the record supports a finding that petitioner claimed depreciation and depletion deductions on the Ward lease as one property. The returns are not in evidence. In any event, it had no available election to do so.

Petitioner introduced persuasive testimony that the cash consideration paid for the Ward lease reflected approximately an agreed price of $70 an acre, no portion of the acreage being more valuable than another. For the allocation of the cash consideration to lots 10 and 11, we approve the use of an acreage basis. The parties have stipulated petitioner's contention in this respect that "the amount of the claimed deduction is $15,560.05," but such language falls short of an agreement as to amount. We hold, therefore, that petitioner is entitled to deduct the cost of lots 10 and 11, including the drilling expense of the dry well and the cash consideration properly attributable thereto as computed under Rule 50. A decrease of $2,503.28 in the depletion deduction allowed will likewise be made in accordance with the stipulation.

4.—Petitioner assails the disallowance of salaries of $833.33 and $2,604.12 paid to its vice president, J. R. Frankel, for the period September 1 to December 31, 1942, and the year 1943, respectively. Frankel had been actively engaged in rendering services to petitioner since its formation in 1939, but to aid petitioner's financial position the officers, who were shareholders, served without compensation until September 1942. At that time Frankel was in the United States Army; he was not released until October 1945, when he returned to petitioner's employ. Respondent defends the disallowance on the ground that

Frankel rendered no services during the periods for which the salaries were paid. Obviously this is true, but in 1920 the Commissioner ruled in article 108, Regulations 45, that:

\* \* \* Salaries paid by employers during the continuance of the war to employees who are absent in the military or naval service \* \* \*, but who intend to return at the conclusion of the war, are allowable deductions.

And the same provision appeared in article 108, Regulations 62; article 109, Regulations 65 and 69; article 129, Regulations 74 and 77. In 1940 its provisions were declared in force by I. T. 3417, 1940-2 C. B. 64. They have thus been given administrative effect over a long period of years, and, while not based on an explicit statutory enactment, qualify as a business expense, because such payments are justified by past services and an employer's advantage in retaining the services of experienced personnel when released from service. We do not deem it detrimental to petitioner's claim that Frankel had not been paid for his services before the war or that one other of petitioner's former employees in the armed forces, who did not return, was not paid while absent. While all the officers were shareholders and members of the Frankel family, this relation does not defeat a right to compensation for services, and, as each owned 20 per cent of the stock, disparity in the amounts paid to each is suggestive rather of compensation than a distribution of profits. The salaries paid to J. R. Frankel fall within the ruling, and the Commissioner erred in not allowing their deduction.

The parties have stipulated that petitioner is entitled to an additional depletion deduction of $8,180 for 1942 and a deduction of $2,054.59 for 1942 and of $19.38 for 1943 on account of income taxes paid to Louisiana, and that excess profits credits for each year are to be redetermined by computations in accordance with this decision.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

BLACK, *J.*, dissenting: I respectfully dissent from the majority opinion wherein it holds that petitioner is not entitled to deduct as ordinary and necessary business expenses intangible drilling and development costs which it elected to deduct rather than to capitalize in the two taxable years 1941 and 1942. My views in respect to that issue were fully stated in my dissent in the *F. H. E. Oil Co.* case, 3 T. C. 13, and I shall not repeat them here, but simply refer to that dissenting opinion for a statement of my views. It is true that the Fifth Circuit affirmed the majority opinion in the *F. H. E. Oil Co.* case, but with all due respect to that court, I still think the decision was wrong.