OLIVER IRON MINING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12886. Promulgated September 28. 1949.

*E. W. Pavenstedt, Esq.,* and *A. C. Newlin, Esq.,* for the petitioner.
*Scott A. Dahlquist, Esq.,* for the respondent.

#### OPINION.

MURDOCK, *Judge*: The Commissioner determined deficiencies of $163,162.08 and $7,074.71 in income tax for 1939 and 1940. The only issue for decision is whether the petitioner's adjusted basis for loss on the Pettit lease, terminated in 1939, included $1,675,050.03 representing unrecovered cost paid under the Chemung contract of 1914. The facts have been stipulated.

The petitioner filed its returns for the taxable years with the collector of internal revenue for the second district of New York. It was engaged for many years up to and including 1940 in mining iron ore.

Chemung Iron Co. sublet 12 leases of iron ore properties to the petitioner in 1903. The leases were for terms of from 25 to 50 years

and required the payment to the lessors of royalties per ton of ore mined and minimum annual advance royalties. The petitioner agreed to pay the amounts due the lessors and to pay Chemung, in addition, the difference between those per ton royalties and 50 cents per ton, as well as minimum annual advance royalties for Chemung alone. One of the leases was the Pettit lease, which called for royalties of 25 cents per ton mined to the lessors and 5 cents per ton mined to Adams, who had had an option on the lease, plus minimum annual advance royalties to each. It was subject to termination upon notice of 60 days.

The petitioner in 1913 purchased Chemung's interest in the leases. Each party had explored the leases to estimate the probable mineral contents of each. The purchase price was the total of a price for each lease based upon an estimated mineral content for each, arrived at by a compromise, multiplied by royalties thereon. The stipulation shows the total amount paid and the portion allocable to each lease. The portion allocable to each lease was reflected on the books of the petitioner.

The petitioner mined ore from some of the other leases, but never mined any ore from the Pettit lease and terminated it in 1939, after due notice, to avoid the payment of further annual minimum advance royalties. It claimed a loss for 1939 from the termination of the Pettit lease as follows:

| | |
|---|---|
| Exploration costs | $18, 353. 02 |
| Advance royalties to the lessors and to Adams | 425, 319. 30 |
| Total | 443, 672. 32 |

The Commissioner allowed that loss in determining the deficiency.

The petitioner now claims a greater loss, computed as follows:

| | |
|---|---|
| Exploration costs | $18, 381. 94 |
| Advance royalties to lessors and Adams | 425, 319. 30 |
| Costs of interest acquired from Chemung in 1914 | 1, 677, 343. 20 |
| Total cost of Pettit lease | 2, 121, 044. 44 |
| Less depletion allowable for 1935 on account of mining by a trespasser | 2, 322. 09 |
| 1939 loss on Pettit lease | 2, 118, 722. 35 |
| Subtracting the loss already allowed | 443, 672. 32 |
| Leaves an additional amount to be allowed of | 1, 675, 050. 03 |

The petitioner, in short, contends that its loss upon termination of the Pettit lease includes the entire cost, i. e., the amounts paid for explorations and as advance royalties, already allowed, plus the cost of the Chemung interest, not yet allowed, less depletion due to the trespass mining. The Commissioner refuses to include the cost of the Chemung interest in the computation of the loss. There is no room for

disagreement about the figures, since they have been stipulated. The Commissioner argues that the 1914 contract with Chemung "was a unitary contract or contract by the entirety covering all of the properties embraced therein" and thereafter "depletion was taken [and allowed] on the basis of the contract as a whole and not with respect to any of the individual properties embraced therein." He seems to conclude that no part of the total paid Chemung under the 1914 contract can be allocated or recognized as a part of the cost of one of the twelve leases, here the Pettit lease, but all must be recovered through depletion.

The petitioner, in computing depletion, used the estimated mineral content figures for each lease determined by the Commissioner and computed the amount of depletion with respect to the amount paid Chemung under the 1914 contract by using an average amount per ton mined from the leases. It allocated that depletion on its books to each lease in proportion to the tons mined from that lease. Deductions claimed under this method have been allowed by the Commissioner. There is still a large part of the amount paid Chemung under the 1914 contract which has not been recovered through depletion or in any other way, and there is here no claim for a second recovery of a part of cost already recovered through depletion deductions. However, if it did appear, and it does not, that excessive depletion had been allowed with respect to other leases, it is not too late for the Commissioner to correct his error and no such question need complicate the present case. Furthermore, the amount deducted and allocated to the Pettit lease on account of the trespass mining in 1935 was less than the $2,322.09 deemed allowable in the loss computation set forth above. That deduction exceeds the only amount ever claimed and allowed as depletion on the Pettit lease prior to 1939.

The unrecovered cost of a lease is deductible as a loss when a lease is terminated under circumstances similar to those here present, and the Commissioner has recognized this rule by allowing a part of the loss. *Oliver Iron Mining Co.*, 10 T. C. 908; *Berkshire Oil Co.*, 9 T. C. 903; *Henry C. Rowe*, 19 B. T. A. 906. A lump sum purchase price should be allocated to the several leases for the purpose, *inter alia*, of computing loss upon termination of a lease, unless such allocation is wholly impracticable. *Berkshire Oil Co., supra; Nathan Blum*, 5 T. C. 702; *Searles Real Estate Trust*, 25 B. T. A. 1115; *Biscayne Bay Islands Co.*, 23 B. T. A. 731. Here, a definite part of the 1914 cost of all of the leases is easily and properly identified as a part of the cost of the Pettit lease. That is the way the petitioner and Chemung computed the total cost in 1914. The Commissioner has not suggested any valid reason for denying the petitioner the loss which it claims and it is allowed.

*Decision will be entered under Rule 50.*